**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

_____

CONSUMER FINANCIAL PROTECTION
BUREAU,

         *Petitioner-Appellee*,

                          Case No. 17-55721

      v.

FUTURE INCOME PAYMENTS, LLC,

         *Respondent-Appellant*,

_____

**CONSUMER FINANCIAL PROTECTION BUREAU'S OPPOSITION TO
APPELLANT'S EMERGENCY MOTION FOR STAY PENDING APPEAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... i

INTRODUCTION ................................................................................1

BACKGROUND .................................................................................2

    A.    Legislative Background...................................................2

    B.    The Bureau's Investigation and Prior Proceedings .................3

    C.    Proceedings in the District Court ....................................5

LEGAL STANDARD ...........................................................................6

ARGUMENT .....................................................................................6

I.    FIP Is Not Likely To Succeed on the Merits...................................7

II.    FIP Cannot Demonstrate that Irreparable Harm Is Probable. ......................10

    A.    Having to turn over documents does not cause irreparable harm. .......11

    B.    FIP's Fourth and Fifth Amendment claims do not establish a probability of irreparable harm...............................13

III.  A Stay Would Harm the Bureau and the Public Interest...............................19

CONCLUSION ..................................................................................22

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES**                                                            **Page(s)**

*Alliance for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ................................................................ 7

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,*
  490 F.3d 718 (9th Cir. 2007) ................................................................ 20

*Buckley v. Valeo,*
  424 U.S. 1 (1976) ................................................................................... 9

*CFPB v. Gordon,*
  819 F.3d 1179 (9th Cir. 2016) .............................................................. 11

*Church of Scientology of Cal. v. United States,*
  506 U.S. 9 (1992) ................................................................................. 11

*Deaver v. Seymour,*
  822 F.2d 66 (D.C. Cir. 1987) ............................................................... 16

*EEOC v. Karuk Tribe Hous. Auth.,*
  260 F.3d 1071 (9th Cir. 2001) .............................................................. 20

*Fed. Maritime Comm'n v. Port of Seattle,*
  521 F.2d 431 (9th Cir. 1975) ............................................................... 19

*Hill v. SEC,*
  825 F.3d 1236 (11th Cir. 2016) ........................................................... 16

*Humphrey's Executor v. United States,*
  295 U.S. 602 (1935) ........................................................................ 7, 18

*In re al-Nashiri,*
  791 F.3d 71 (D.C. Cir. 2015) ........................................................... 5, 16

*In re Application of President's Comm'n on Organized Crime,*
  763 F.2d 1191 (11th Cir. 1985) ........................................................... 10

i

*In re Subpoena Duces Tecum*,
   228 F.3d 341 (4th Cir. 2000) ................................................................ 14

*Jarkesy v. SEC*,
   803 F.3d 9 (D.C. Cir. 2015) .................................................................. 16

*John Doe Co. v. CFPB*,
   849 F.3d 1129 (D.C. Cir. 2017) ............................................. 4, 5, 9, 15

*John Doe Co. v. CFPB*,
   --- F. Supp. 3d ----, 2017 WL 663528 (D.D.C. Feb. 17, 2017) .......... 3, 4, 6, 14, 20

*Lair v. Bullock*,
   697 F.3d 1200 (9th Cir. 2012) .............................................................. 10

*Latta v. Otter*,
   771 F.3d 496 (9th Cir. 2014) .................................................................. 6

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) .................................................... 11, 13, 16

*Mistretta v. United States*,
   488 U.S. 361 (1989) .............................................................................. 19

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) .............................................................................. 11

*Morrison v. Olson*,
   487 U.S. 654 (1988) ........................................................................ 17, 18

*Nken v. Holder*,
   556 U.S. 418 (2009) ......................................................................... 6, 19

*PHH Corp. v. CFPB*,
   839 F.3d 1 (D.C. Cir. 2016) ....................................... 4, 5, 8, 11, 18

*Preminger v. Principi*,
   422 F.3d 815 (9th Cir. 2005) ................................................................ 21

*Protectmarriage.com-Yes on 8 v. Bowen,*
752 F.3d 827 (9th Cir. 2014) ............................................................. 12

*Pub. Util. Comm'r of Oregon v. Bonneville Power Admin.,*
767 F.2d 622 (9th Cir. 1985) ............................................................. 15

*Ramsden v. United States,*
2 F.3d 322 (9th Cir. 1993) ........................................................... 12, 13

*Rodriguez v. Robbins,*
715 F.3d 1127 (9th Cir. 2013) ........................................................... 21

*Stormans, Inc. v. Selecky,*
586 F.3d 1109 (9th Cir. 2009) ........................................................... 17

*Tilton v. SEC,*
824 F.3d 276 (2d Cir. 2016) ............................................................. 16

*U.S. EPA v. Alyeska Pipeline Serv. Co.,*
836 F.2d 443 (9th Cir. 1988) ............................................................. 11

*United States v. Anderson,*
2015 WL 294831 (N.D. Cal. Jan. 21, 2015) ...................................... 12

*United States v. Golden Valley Elec. Ass'n,*
689 F.3d 1108 (9th Cir. 2012) ........................................................... 14

*Washington v. Trump,*
847 F.3d 1151 (9th Cir. 2017) ........................................................... 15

## CONSTITUTIONAL PROVISIONS AND STATUTES

2 U.S.C. § 288d(a) ............................................................................. 9

12 U.S.C. § 5491(a) ........................................................................... 2

12 U.S.C. § 5491(c)(3) ....................................................................... 7

12 U.S.C. § 5511(c)(4) ....................................................................... 2

12 U.S.C. § 5562(c)(1) ............................................................... 2

12 U.S.C. § 5562(e)(1) ............................................................... 2

12 U.S.C. § 5562(h)(2) ............................................................... 2

15 U.S.C. § 41 (1934) ................................................................ 7

15 U.S.C. § 45 (1934) .............................................................. 18

Pub. L. No. 111-203, 124 Stat. 1376, 1376 (2010) .................... 2

U.S. Const., Amdt. V ............................................................... 15

## INTRODUCTION

In November 2016, the Consumer Financial Protection Bureau (Bureau) sent Appellant Future Income Payments, LLC (FIP) an administrative subpoena, known as a civil investigative demand (CID), seeking information about the company's business. The Bureau issued this CID amidst mounting indications that FIP (or other parties about whom it might have information) may be violating federal consumer financial protection laws: to date, six state regulators have publicly concluded that FIP operated its business in violation of consumer protection laws; a seventh regulator's charges against the company are pending.

FIP has successfully delayed the Bureau's investigation for over six months. Before seeking emergency relief in this Court, FIP asked three different courts — the District Court for the District of Columbia, the D.C. Circuit, and the Central District of California below — to halt the Bureau's investigation on the ground that the Bureau's structure, in its view, is unconstitutional. All three courts refused.

This Court should do the same. FIP cannot establish a likelihood of success on the merits. Nor will it suffer any irreparable harm if the Bureau's investigation is permitted to go forward — as all three courts that have considered FIP's challenge so far have agreed. A stay, moreover, would seriously prejudice the Bureau's — and the public's — interest in expeditiously investigating potential violations so that the agency can take action (if warranted) to protect consumers

1

from any wrongdoing that the investigation uncovers. This Court should deny FIP's emergency motion for a stay pending appeal and permit the Bureau to pursue its investigation without further delay.

## BACKGROUND

### A. Legislative Background

Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act to, among other things, "protect consumers from abusive financial services practices." Pub. L. No. 111-203, 124 Stat. 1376, 1376 (2010). Title X of that Act established the Bureau and charged it with primary responsibility for "regulat[ing] the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491(a). To carry out these responsibilities, the Bureau is empowered to "tak[e] appropriate enforcement action to address violations of Federal consumer financial law." *Id.* § 5511(c)(4).

As relevant here, the Bureau has investigative authority to issue CIDs requiring the production of documents, testimony, or other information from "any person" that the Bureau believes may have information "relevant to a violation." *Id.* § 5562(c)(1). If a person fails to comply, the Bureau may petition a district court for an order enforcing compliance, and "[a]ny final order" entered by the district court is "subject to appeal." 12 U.S.C. §§ 5562(e)(1), (h)(2).

2

**B. The Bureau's Investigation and Prior Proceedings**

FIP purports to purchase portions of future income streams, like pensions, from consumers. Appellant's Appendix to Emergency Motion (App'x) 64. On November 23, 2016, the Bureau issued a CID to FIP seeking information about its products, services, and operations. The CID's stated purpose was to determine whether financial-services companies or others had violated federal consumer financial laws "in connection with offering or providing extensions of credit or financial advisory services related to transactions involving pensions, annuities, settlements, or other future-income streams." App'x 3. The Bureau is not the only regulator interested in FIP's activities. Since 2015, six state regulators have concluded that FIP violated state consumer protection statutes by lending without a license or by making usurious loans, and the Los Angeles City Attorney's Office recently announced its own suit against FIP. App'x 118.

In the six months since the Bureau sent FIP its CID, FIP has gone to great lengths to avoid compliance. After the Bureau denied FIP's request to set aside the CID, FIP (initially proceeding under a pseudonym) filed a preemptive suit in the U.S. District Court for the District of Columbia that challenged the Bureau's constitutionality and asked that court to preliminarily enjoin the Bureau from enforcing the CID. *See John Doe Co. v. CFPB*, No. 17-0049, --- F. Supp. 3d ----, 2017 WL 663528, at *1 (D.D.C. Feb. 17, 2017) ("*John Doe I*"). The district court

3

declined to stop the Bureau's investigation, concluding (among other things) that FIP would not be irreparably harmed by the Bureau's investigation or any future enforcement action against it. *Id.* at \*6-7.

FIP then turned to the D.C. Circuit, seeking an emergency injunction pending appeal that would have restrained the Bureau from enforcing the CID. *See John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) ("*John Doe II*"). The D.C. Circuit likewise refused to grant FIP relief. *Id.* at 1135. That court found that FIP could not demonstrate a likelihood of success on the merits of its constitutional challenge by relying on the panel opinion in *PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016), *vacated, reh'g en banc granted*, No. 15-1177 (D.C. Cir. Feb. 16, 2017), in which two judges had found that the statutory grant of for-cause removal protection for the Bureau's Director violated Article II of the Constitution. *See John Doe II*, 849 F.3d at 1131-34. Not only had the decision "been vacated," *id.* at 1132, but it also did not support stopping the Bureau's investigation, *id.* at 1132-33. The vacated panel opinion in *PHH* would have severed the for-cause removal provision while permitting the Bureau to "continue its work apace." *Id.* The D.C. Circuit also rejected FIP's argument that if the Bureau's investigation were not stopped, FIP would suffer a "separation-of-powers injury [that] is by its very nature irreparable." *Id.* at 1135. The court explained that, "[i]n the absence of 'immediate or ongoing harm stemming from the [Bureau's]

4

alleged constitutional defects,' the 'violation of separation of powers' by itself is not invariably an irreparable injury."[1] *Id.* (quoting *In re al-Nashiri*, 79 F.3d 71, 79-80 (D.C. Cir. 2015)) (alteration in original).

## C. Proceedings in the District Court

Meanwhile, the Bureau filed a petition in the U.S. District Court for the Central District of California to enforce its CID. App'x 52. FIP opposed the petition and then asked the court to wait to decide the petition until the D.C. and Ninth Circuits ruled on the Bureau's constitutionality. App'x 89. On May 17, 2017, the district court denied that request and granted the Bureau's petition to enforce the CID. Order (1) Granting the Consumer Financial Protection Bureau's Petition to Enforce Civil Investigative Demand and (2) Denying Future Income Payments' Motion to Stay Case ("Enforcement Order") (ECF No. 47) (App'x 117). The Court concluded that the Bureau's structure was constitutional — and that, even if it were not, the CID should nonetheless be enforced because the power to issue subpoenas is not confined to the Executive Branch. *Id.* at 11-19 (App'x 127-35).

FIP then filed an *ex parte* application to stay the court's order pending appeal. App'x 142. On May 23, 2017, the district court denied that request. App'x 147. Consistent with the decision of the D.C. Circuit, the district court concluded

---

[1] Judge Kavanaugh, who authored the *PHH* decision, dissented. *John Doe II*, 849 F.3d at 1135 (Kavanaugh, J., dissenting).

that FIP had not established a likelihood of success on the merits or irreparable harm. App'x 147-49. The court further concluded that the harm to the Bureau and the public interest "also militate against" a stay because "a stay would cripple this investigation during the lengthy appeal process," thereby undercutting the public's "'strong interest in the vigorous enforcement of consumer protection laws.'" App'x 149 (quoting *John Doe I*, 2017 WL 663528, at *7).

## LEGAL STANDARD

A party seeking a stay "bears the burden of showing his entitlement to a stay." *Latta v. Otter*, 771 F.3d 496, 498 (9th Cir. 2014). In deciding whether a stay is warranted, this Court considers four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Because "[a] stay is an intrusion into the ordinary processes of administration and judicial review," a stay "is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 427 (internal quotations omitted).

## ARGUMENT

None of the four stay factors supports granting the stay FIP seeks.

6

## I. FIP Is Not Likely To Succeed on the Merits.

FIP cannot establish the likelihood of success on the merits necessary to obtain a stay. To begin, FIP is not likely to succeed on its constitutional challenge because controlling Supreme Court precedent makes clear that Congress can properly grant for-cause removal protection to the head of an agency with responsibilities like the CFPB's. In *Humphrey's Executor v. United States*, the Supreme Court approved for-cause removal protection for Federal Trade Commission (FTC) members identical to the protection afforded the Bureau's Director. 295 U.S. 602, 621-22, 632 (1935); *compare* 15 U.S.C. § 41 (1934) ("Any Commissioner may be removed by the President for inefficiency, neglect of duty, or malfeasance in office."), *with* 12 U.S.C. § 5491(c)(3) ("The President may remove the Director for inefficiency, neglect of duty, or malfeasance in office."). FIP offers no persuasive basis for distinguishing this precedent — as the district court correctly explained in its order. Enforcement Order at 11-18 (App'x 127-34).

In any event, FIP does not explain why it is "likely" to succeed on the merits and instead asserts merely that its constitutional challenge "presents 'serious legal questions.'" Mot. at 9 (citation omitted). But even assuming that FIP's bare constitutional challenge raises "serious legal questions," *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011), that is not enough — because for two separate reasons, FIP cannot establish even "serious legal

7

questions" on the ultimate issue here: whether the Bureau's CID must be enforced.[2]

First, although FIP relies on the vacated *PHH* panel decision and the Department of Justice's en banc brief in that case to support is claim of "serious legal questions" (Mot. at 8-9), neither the decision nor the brief suggests that FIP could avoid this investigation if the Bureau were found unconstitutional. Rather, both conclude that the proper remedy for the (alleged) constitutional violation would be to "sever[] the for-cause removal provision." *PHH*, 839 F.3d at 39; Br. for the United States as *Amicus Curiae*, *PHH Corp. v. CFPB*, No. 15-1177, 2017 WL 1035617, at *19-21 (filed Mar. 17, 2017). That remedy would "not halt the CFPB's ongoing operations or the CFPB's ability to uphold" actions taken against regulated entities. *PHH*, 839 F.3d at 39.

Second, the constitutional problem that FIP alleges would not preclude the Bureau from exercising its subpoena authority in any event. In FIP's collateral

---

[2]   For this reason, it is entirely irrelevant that the Ninth Circuit has accepted interlocutory review of an order addressing the Bureau's constitutionality and that, in *PHH*, two D.C. Circuit judges and the Department of Justice (after a change in Administration) have opined that the Bureau is unconstitutional. *See* Mot. at 8-9. Even if those facts could establish "serious legal questions" on the Bureau's constitutionality, they would not establish serious legal questions about whether the CID must be enforced.  Both *PHH* and the cases in which the Ninth Circuit accepted review are Bureau enforcement actions, not CID enforcement proceedings. *See PHH*, 839 F.3d at 12; *CFPB v. D&D Mktg, Inc.*, No. 17-55709 (9th Cir.); *CFPB v. Fomichev*, No. 17-55710 (9th Cir.); *CFPB v. Gasparyan*, No. 17-55711 (9th Cir.). (The three Ninth Circuit cases are appeals from the same order.)

challenge to this CID, the D.C. Circuit noted that to show that "the Bureau transgresses the separation of powers just by issuing a CID — just by investigating a regulated entity's compliance with federal law — [FIP] would have to show that *only* the Executive Branch can demand information from regulated businesses or take such investigative steps." *John Doe II*, 849 F.3d at 1132 (emphasis in original). It cannot make that showing. Congress issues and enforces subpoenas. *See* 2 U.S.C. § 288d(a). And in *Buckley v. Valeo*, although the Supreme Court held that the Federal Election Commission's structure violated separation-of-powers principles, it also held that the unconstitutionally structured Commission could "properly perform duties … in aid of those functions that Congress may carry out by itself." 424 U.S. 1, 139 (1976). There was "no question" that this included exercising powers "of an investigative and informative nature." 424 U.S. at 137.[3]

---

[3]    FIP attempts to distinguish *Buckley* first by claiming that Congress cannot investigate potential law violations. Mot. at 14-15. But Congress has investigated potential wrongdoing since the early days of the Republic. *See* U.S. Senate, *A History of Notable Senate Investigations*, https://www.senate.gov/artandhistory/history/common/briefing/Investigations.htm; U.S. House of Representatives, History, Art & Archives, *Investigations and Oversight*, http://history.house.gov/Institution/Origins-Development/Investigations-Oversight/. Nor can FIP distinguish *Buckley* by claiming that that case dealt with what powers "improperly appointed officers" could exercise, while this case addresses the powers of an "unconstitutionally structured agency." Mot. at 15. *Buckley* in fact focused not on the officers, but on what powers "*the Commission* as presently constituted" could exercise. *Buckley*, 424 U.S. at 137 (emphasis added). Besides, FIP offers no support for its apparent theory that an agency unconstitutionally structured to include members appointed in violation of the Appointments Clause (as in

Moreover, the only other case of which the Bureau is aware that has addressed a subpoena issued by an unconstitutionally structured body has upheld the subpoena. In that case, when the Eleventh Circuit confronted a subpoena issued by a commission that the court found to be unconstitutionally structured, that court nonetheless concluded that the subpoena was "valid and the contempt order due to be affirmed." *In re Application of President's Comm'n on Organized Crime*, 763 F.2d 1191, 1202 (11th Cir. 1985) (Fay, J., writing separately) (concluding that "our holding regarding the separation of powers doctrine does not require the voiding" of a Commission subpoena); *id.* (Roney, J., special concurrence) (agreeing that "even if the Commission on Organized Crime is unconstitutionally constituted, its actions can be given de facto validity and the subpoena enforced"). FIP offers no contrary authority.

For these reasons, FIP cannot establish a likelihood of success — or even "serious legal questions" — on the merits of whether the Bureau's CID must be enforced.

## II. FIP Cannot Demonstrate that Irreparable Harm Is Probable.

A party seeking a stay must show "that there is a *probability* of irreparable injury if the stay is not granted." *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012) (emphasis in original). In other words, a movant "must show that an

---

*Buckley*) can do more than an agency unconstitutionally structured in violation of the Take Care Clause (as FIP contends is the case here).

10

irreparable injury is the more probable or likely outcome." *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011). FIP falls far short of making that showing.

**A. Having to turn over documents does not cause irreparable harm.**

FIP's sole claim of any concrete, real-world harm is that disclosing "sensitive proprietary documents to the Bureau is a 'bell that cannot be unrung.'" Mot. at 17. But both the Supreme Court and this Court have squarely rejected FIP's suggestion that an improper disclosure cannot later be remedied: "[A] court can effectuate relief by ordering the Government to return the records" and "to destroy or return any and all copies it may have in its possession." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992); *see also U.S. EPA v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443, 445 (9th Cir. 1988) (explaining that records can "be returned to [subpoenaed party] if they were wrongfully subpoenaed"), *abrogated on other grounds by McLane Co., Inc. v. EEOC*, 137 S. Ct. 1159 (2017).[4] Indeed, the Supreme Court has found that appellate courts can remedy even the improper disclosure of *privileged* material (which is not at issue here). *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009). That is

---

[4]  If the Court were to find a constitutional violation, the Court may not even need to order any remedy in connection with this particular investigation. The Court could ameliorate any constitutional infirmity with the Bureau's structure by severing the offending statutory provision. *See PHH*, 839 F.3d at 37-39. The constitutionally structured agency could itself then remedy any problem with the CID by ratifying its issuance, thereby "resolv[ing] any [separation-of-powers] deficiencies." *CFPB v. Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016).

why courts have consistently rejected claims that producing documents in response to an administrative subpoena while an appeal is pending qualifies as irreparable harm. *See, e.g.*, Order, *CFPB v. Harbour Portfolio Advisors, LLC*, No. 17-1302, at 3 (6th Cir. Mar. 31, 2017) (declining to stay order enforcing CID pending appeal, in part because "court could fashion some meaningful relief if the Respondents are successful on appeal"); *United States v. Anderson*, No. 14-CV-01932-JST, 2015 WL 294831, at *2 (N.D. Cal. Jan. 21, 2015) ("District Courts have routinely found that no irreparable injury would result from the denial of a stay pending appeal of an order enforcing compliance with an IRS summons.") (collecting cases).[5]

Nor can FIP base its claim of irreparable harm on the fact that the Bureau might use the information it obtains "throughout [its] case against" FIP or might share the information with other regulators. *See* Mot. at 17. FIP apparently complains that the Bureau or others could use the documents in prosecutions against the company, but this Court has already rejected the notion that a party will suffer irreparable harm if improperly obtained documents "may lead to his prosecution." *Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993). "The mere threat of prosecution is not sufficient to constitute irreparable harm" and does

---

[5]   FIP errs in relying (Mot. at 17) on *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 838 (9th Cir. 2014). There, the disclosure was irreparable because it involved "vast dissemination" to the public. *Id.* FIP faces no such exposure here.

not, without more, entitle a person to have "improperly seized documents …

returned to him." *Id.*

### B. FIP's Fourth and Fifth Amendment claims do not establish a probability of irreparable harm.

Unable to establish any concrete irreparable harm that it will suffer from

complying with the Bureau's CID, FIP claims that complying with the CID will

violate its Fourth and Fifth Amendment rights, which it contends "unquestionably

constitutes irreparable injury." Mot. at 16. But there are at least two problems with

this contention. First, FIP offers no support for its claim that the alleged separation-

of-powers violation results in a violation of its Fourth and Fifth Amendment rights.

And, second, even if being required to respond to a CID from an agency whose

structure violates the separation of powers could somehow amount to a Fourth or

Fifth Amendment violation, FIP would still have to establish that it was "likely" to

suffer those violations. *See Leiva-Perez*, 640 F.3d at 968. To do that, FIP would

have to show that it was "more probable" than not that the Bureau's structure is

unconstitutional — a showing it cannot make.

1. As for the first problem, FIP cannot establish that the separation-of-

powers violation it alleges violates its Fourth or Fifth Amendment rights. FIP

claims that enforcement of a CID is "consistent with the Fourth Amendment" only

if it is issued "for a purpose that Congress can order." Mot. at 15-16. But there is

no question that Congress can (and did) authorize administrative subpoenas for the

purpose of investigating potential violations of federal consumer protection laws. Indeed, as the D.C. district court rightly observed, FIP has neither claimed "that it has a right not to be investigated[,]" nor has it disputed "that the FTC could lead an identical investigation." *John Doe I*, 2017 WL 663528, at *6 n.5. FIP apparently means to suggest that Congress could not authorize an investigation by an agency with the Bureau's supposedly unconstitutional structure. FIP, however, cites no authority for the proposition that a structural constitutional defect means that any administrative subpoena that an agency issues violates the recipient's Fourth Amendment rights. This undeveloped suggestion, moreover, makes little sense. The district court reached an independent conclusion after an adversary proceeding that the disclosure sought by the CID was "not unreasonable." *See United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1115 (9th Cir. 2012) (internal quotations omitted). The district court's independent review thus safeguarded FIP from being subjected to an unreasonable search or seizure. *See In re Subpoena Duces Tecum*, 228 F.3d 341, 348-49 (4th Cir. 2000) (explaining that subpoenas comply with Fourth Amendment because "the issuance of a subpoena initiates an adversary process that can command the production of documents and things only after judicial process is afforded").

FIP's claimed Fifth Amendment violation fails for similar reasons. The Fifth Amendment protects against deprivations of "liberty … without due process of

law." U.S. Const., Amdt. V. FIP's opportunity to present its arguments in the district court provided it all the process it was due. And although the Constitution's separation-of-powers principles serve to protect liberty, it does not follow that a separation-of-powers violation also violates the *Fifth Amendment's* distinct protection of liberty — and, indeed, FIP can cite no authority suggesting that it does.

Nor can FIP establish that being subjected to an otherwise lawful investigation would constitute irreparable harm if the investigating agency were unconstitutionally structured. *See* Mot. at 16. As the D.C. Circuit explained in rejecting one of FIP's earlier efforts to stop this investigation, an alleged violation of the separation of powers does not "invariably" cause irreparable harm. *John Doe II*, 849 F.3d at 1135. For instance, in declining to stay an injunction of an executive order, this Court held that an "erosion of the separation of powers" did not cause the Government irreparable harm, because the Government "may yet pursue and vindicate its interests in the full course of this litigation." *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017). And many courts of appeals, including this one, have held that a party does not suffer irreparable injury from being subjected to an allegedly unconstitutional agency adjudication. *Pub. Util. Comm'r of Oregon v. Bonneville Power Admin.*, 767 F.2d 622, 630-31 (9th Cir. 1985) (Kennedy, J.) (finding no "irreparable injury that is not correctable on review" despite Fifth

Amendment Due Process challenge); *Tilton v. SEC*, 824 F.3d 276, 286 (2d Cir. 2016) (finding no irreparable harm from being subjected to an allegedly unconstitutional adjudication); *Hill v. SEC*, 825 F.3d 1236, 1245-46 (11th Cir. 2016) (same); *Jarkesy v. SEC*, 803 F.3d 9, 26 (D.C. Cir. 2015) (same). Indeed, the D.C. Circuit has held that undergoing trial in a military commission that a person claims violates the separation of powers does not cause that person irreparable harm. *See In re al-Nashiri*, 791 F.3d at 79-80 (explaining that vacating any conviction on appeal "would fully vindicate [the person's] rights" (internal quotations and alteration omitted)); *cf. also Deaver v. Seymour*, 822 F.2d 66, 67, 71 (D.C. Cir. 1987) (declining to enjoin investigation by allegedly unconstitutional independent counsel because the subject's "rights can be vindicated by reversal of any conviction"). For all of these reasons, FIP's claim that the separation-of-powers violation it alleges irreparably deprives it of its "constitutional rights" is wrong.

2. In any event, even if FIP could establish that a separation-of-powers violation would cause irreparable injury to its constitutional rights (it cannot), it still could not show that that injury was "the more probable or likely outcome," as required to obtain a stay, *Leiva-Perez*, 640 F.3d at 968. This is because it is not "probable" that the Bureau's structure is in fact unconstitutional. Indeed, FIP does not even try to establish such a probability and instead argues only that its

constitutional challenge "presents an important, unresolved question of constitutional law" (Mot. at 2) about which "reasonable judges" may differ (*id.* at 1). *See also id.* at 3 ("serious, unresolved questions); *id.* at 9 ("serious legal questions"). But an "unresolved" constitutional question, even a "serious" one, is not enough. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (holding that there must be a "likelihood of irreparable injury," not just a "possibility," and indicating that a "colorable" or "serious" First Amendment claim was not enough to establish a *likely* injury to challengers' First Amendment rights) (internal quotations omitted)).

FIP cannot make the required showing that the Bureau is likely unconstitutional. As noted above, the Supreme Court in *Humphrey's Executor* already approved identical for-cause removal protections for FTC commissioners. *See supra* Section I. This binding precedent precludes FIP from establishing that the Bureau is likely unconstitutional.

FIP attempts to distinguish this precedent by contending (Mot. at 10) that Congress can enact such for-cause removal restrictions only for multimember commissions and inferior officers, but that contention finds no support in the Supreme Court's precedent. Rather, the Court in *Morrison v. Olson* made clear that "the real question" in evaluating such restrictions' constitutionality is whether they "are of such a nature that they impede the President's ability to perform his

17

constitutional duty" to "ensure the faithful execution of the laws." 487 U.S. 654, 691, 693 (1988). FIP does not offer any reason why removal restrictions for the Bureau's Director impede the President's ability to execute the laws, while identical restrictions for FTC commissioners do not. If anything, the President has *more* power over the Bureau's single Director — for the President can identify more easily the official responsible for any problems. Indeed, even the vacated *PHH* decision acknowledged that, as between the single-Director Bureau and a multimember commission, there was "no meaningful difference in responsiveness and accountability to the President." *PHH*, 839 F.3d at 32. As the district court here concluded, "[t]hat is enough to end the inquiry." Enforcement Order 14 (App'x 130).

Nor can FIP prevail by claiming that the Bureau wields "executive powers" while the FTC "acted as a legislative agency." Mot. at 12 (internal quotations and citation omitted). *Morrison* squarely refutes this by confirming that the supposedly "legislative" FTC functions that FIP highlights — "'carry[ing] into effect legislative policies embodied in the statute in accordance with the legislative standard therein prescribed'" — are functions that "would at the present time be considered 'executive.'" *Morrison*, 487 U.S. at 689 n.28 (quoting *Humphrey's Ex'r*, 295 U.S. at 628). And FIP's suggestion (Mot. at 12) that the FTC "lacked enforcement powers" at the time of *Humphrey's Executor* is simply wrong. *See* 15

18

U.S.C. § 45 (1934) (authorizing FTC to initiate administrative cease-and-desist enforcement proceeding against parties believed to be engaging in unfair method of competition and authorizing agency to enforce any resulting order in court).

Finally, FIP's claim that the Bureau's structure is "unprecedented" (Mot. at 11) does no more to establish that the Bureau is "likely" unconstitutional. It is well established that "[o]ur constitutional principles of separated powers are not violated … by mere anomaly or innovation." *Mistretta v. United States*, 488 U.S. 361, 385 (1989). Besides, as the district court here noted, the Bureau's structure is not unprecedented. Enforcement Order 15 (App'x 131) (noting other agencies with similar structures).

For all these reasons, FIP fails to establish any likelihood of irreparable harm.

## III. A Stay Would Harm the Bureau and the Public Interest.

Finally, in deciding whether to grant a stay, a court must "assess[] the harm to the opposing party and weigh[] the public interest." *Nken*, 556 U.S. at 435. "These factors merge when the Government is the opposing party." *Id.* Here, the harm to the Bureau and the public interest weigh strongly against a stay.

This Court has held it "beyond cavil" that "the very backbone of an administrative agency's effectiveness in carrying out the congressionally mandated duties of industry regulation is the rapid exercise of the power to investigate." *Fed.*

19

*Maritime Comm'n v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir. 1975). That is why administrative-subpoena-enforcement actions like this one are meant to be "summary procedures" that "allow speedy investigation." *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1078 (9th Cir. 2001) (internal quotations omitted). And it cannot be doubted that "the public has a strong interest in vigorous enforcement of consumer protection laws." *John Doe I*, 2017 WL 663528, at *7.

Staying the order enforcing the Bureau's CID would seriously undermine these interests. FIP's appeal could take over two years to resolve.[6] That delay would interfere with the public interest in speedy investigations and undercut the Bureau's ability to effectively enforce the laws and protect consumers.[7] In the ordinary case, a stay "inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) (internal quotations omitted). Here, those risks are compounded by the fact that the Bureau's investigation is in its infancy. The Bureau is seeking information so that

---

[6]   U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, Questions 17 & 18, https://www.ca9.uscourts.gov/content/faq.php (explaining that oral argument takes place approximately 12-20 months after a notice of appeal is filed, and that a decision is generally issued 3-12 months after that).

[7]   FIP is wrong to suggest (Mot. at 18) that the Bureau faces no harm from a stay because it waited until now to pursue this investigation. The Bureau does not have infinite investigative resources. That the Bureau could have begun its investigation sooner does not diminish the Bureau's or the public's interest in effective and expeditious investigation and (if appropriate) enforcement of the law.

it can determine whether FIP's ongoing business practices, or the practices of others about which FIP may have information, violate the consumer laws and harm the public. Staying its investigation would unduly delay the Bureau in ever making that determination — and would thwart the Bureau's efforts to ensure that consumers are not harmed by any violations that an investigation might uncover.

FIP misses the mark in contending (Mot. at 17) that these interests in effective enforcement are "minimal" compared to the public's interest in the Bureau's compliance with the Constitution. The Bureau's structure *does* comply with the Constitution — and FIP has not shown it is likely to establish otherwise. In any event, FIP cites no authority for the proposition that an alleged separation-of-powers problem with an agency's structure outweighs the concrete harm that the agency and the public would suffer when an investigation into wrongdoing is delayed.[8]

---

[8]   Indeed, in all the cases that FIP cites, the interest in constitutional compliance tipped in favor of relief only where the constitutional violation caused concrete harm that actually outweighed the countervailing interests. *See, e.g.*, *Rodriguez v. Robbins*, 715 F.3d 1127, 1130, 1145 (9th Cir. 2013) (balance of equities favored challengers "in light of the major hardship posed by needless prolonged detention"); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (inability to register residents of VA premises to vote (in alleged violation of First Amendment) did *not* "outweigh the VA's legitimate interest in providing the best possible care for veterans on the Campus and in maintaining political neutrality for the benefit of Campus residents").

## CONCLUSION

For all these reasons, FIP's emergency motion for a stay pending appeal should be denied.

Respectfully submitted,

Dated: May 30, 2017          /s/ Christopher J. Deal

Mary McLeod
    *General Counsel*
John R. Coleman
    *Deputy General Counsel*
Steven Y. Bressler
    *Assistant General Counsel*
Christopher J. Deal
Kristin Bateman
    *Senior Counsel*

Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-9582 (telephone)
(202) 435-7024 (facsimile)
christopher.deal@cfpb.gov
*Counsel for Petitioner-Appellee*
*Consumer Financial Protection Bureau*

No. 17-55721

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 30, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: May 30, 2017              /s/ Christopher J. Deal

                                 Christopher J. Deal
                                 Attorney for Petitioner-Appellee
                                 Consumer Financial Protection Bureau
                                 1700 G Street, NW
                                 Washington, D.C. 20552
                                 (202) 435-9582 (telephone)
                                 (202) 435-7024 (facsimile)
                                 christopher.deal@cfpb.gov

## CERTIFICATE OF COMPLIANCE

This opposition to Appellant's emergency motion for stay pending appeal complies with the length requirements of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rules 27-1(1)(d) and 32-3 in that it contains 5,185 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f).

This opposition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

Dated: May 30, 2017           /s/ Christopher J. Deal

                              Christopher J. Deal
                              Attorney for Petitioner-Appellee
                              Consumer Financial Protection Bureau
                              1700 G Street, NW
                              Washington, D.C. 20552
                              (202) 435-9582 (telephone)
                              (202) 435-7024 (facsimile)
                              christopher.deal@cfpb.gov