*In The*

# United States Court of Appeals

### For The Ninth Circuit

## CONSUMER FINANCIAL PROTECTION BUREAU,

*Petitioner – Appellee*,

## v.

## FUTURE INCOME PAYMENTS, LLC,

*Respondent – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR CENTRAL CALIFORNIA, SANTA ANA DIVISION

——————

## APPELLANT'S EXCERPTS OF RECORD

——————

Christopher W. Jones
Samuel B. Hartzell
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
(919) 755-2100

Isabelle L. Ord
Julia Marie Brighton
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105
(415) 836-2500

*Counsel for Appellant*                    *Counsel for Appellant*

# TABLE OF CONTENTS

**Appendix Page**

Respondent's Notice of Appeal
    filed May 18, 2017 ...........................................................................1

Order of
The Honorable Josephine L. Staton
Re:  Granting Petition to
Enforce Civil Investigative Demand and
Denying Defendant's Motion to Stay Case
    filed May 17, 2017 ...........................................................................3

Respondent's Opposition to Petition to
Enforce Civil Investigative Demand
    filed March 20, 2017 ......................................................................25

Exhibits to Declaration of Alanna B. Carbis in Support of
Petition to Enforce Civil Investigative Demand
    filed February 21, 2017:

    A.      Civil Investigative Demand
        dated November 23, 2016 .....................................................45

    B.      Decision and Order on Petition to Set Aside or
        Modify Civil Investigative Demand of
        Director Richard Cordray
        dated January 5, 2017 ..........................................................58

Petition to Enforce Civil Investigative Demand
    filed February 21, 2017 ..................................................................64

Docket Entries..................................................................................69

1  CHRISTOPHER JONES (admitted *Pro Hac Vice*)
   cjones@wcsr.com
2  SAMUEL B. HARTZELL (admitted *Pro Hac Vice*)
   shartzell@wcsr.com
3  **WOMBLE CARLYLE SANDRIDGE & RICE, LLP**
   555 Fayetteville Street, Suite 1100
4  Raleigh, NC 27601
   Tel: (919) 755-2112
5  Fax: (919)755-6772

6  ISABELLE ORD (Bar No. 198224)
   isabelle.ord@dlapiper.com
7  JULIA M. BRIGHTON (Bar No. 280418)
   julia.brighton@dlapiper.com
8  JESSE STEINBACH (Bar No. 278923)
   jesse.steinbach@dlapiper.com
9  **DLA PIPER LLP (US)**
   555 Mission Street, Suite 2400
10 San Francisco, California 94105
   Tel:  415.836.2500
11 Fax: 415.836.2501

12 Attorneys for Respondent
   FUTURE INCOME PAYMENTS, LLC
13

14              UNITED STATES DISTRICT COURT

15      CENTRAL DISTRICT OF CALIFORNIA SOUTHERN DIVISION

16

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | CASE NO. 8:17-cv-00303-JLS-SS |
| Petitioner, | |
| v. | **NOTICE OF APPEAL** |
| FUTURE INCOME PAYMENTS, LLC | |
| Respondent. | |

WEST\276638420.1

FIP'S NOTICE OF APPEAL, CASE NO. 8:17-CV-00303-JLS-SS

1       Respondent Future Income Payments, LLC ("FIP") hereby appeals to the

2  United States Court of Appeals for the Ninth Circuit from the Order (1) Granting

3  the Consumer Financial Protection Bureau's Petition to Enforce Civil Investigative

4  Demand and (2) Denying Future Income Payments' Motion to Stay Case entered in

5  this action on the 17th day of May, 2017 (Dkt. 47), a true and correct copy of which

6  is attached hereto as <u>Exhibit A</u>.

7       Attached hereto as <u>Exhibit B</u> is the Representation Statement required by

8  Rules 3-2 and 12-2 of the United States Court of Appeals for the Ninth Circuit and

9  Rule 12(b) of the Federal Rules of Appellate Procedure.

10

11  Dated: May 18, 2017        Respectfully submitted,

12                         **WOMBLE CARLYLE**
**SANDRIDGE & RICE LLP**

13                         By: */s/ Christopher W. Jones*

14                            Christopher W. Jones

15                         **DLA PIPER LLP (US)**

16

17                         By: */s/ Isabelle L. Ord*
                           Isabelle L. Ord

18                         Attorneys for Respondent

19                         FUTURE INCOME PAYMENTS,
LLC

20

21

22

23

24

25

26

27

28

WEST\276638420.1                   -1-

FIP'S NOTICE OF APPEAL, CASE NO. 8:17-CV-00303-JLS-SS

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>        Petitioner,<br><br>   vs.<br><br>FUTURE INCOME PAYMENTS, LLC,<br><br>      Respondent. | CASE NO. 8:17-cv-00303-JLS-SS<br><br>**ORDER (1) GRANTING THE CONSUMER FINANCIAL PROTECTION BUREAU'S PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND AND (2) DENYING FUTURE INCOME PAYMENTS' MOTION TO STAY CASE (Docs. 1, 27)** |

1

1    Before the Court is the Consumer Financial Protection Bureau's (CFPB) Petition to

2  Enforce Civil Investigative Demand.  (Pet., Doc. 1.)  Respondent Future Income Payments,

3  LLC filed an Opposition (Opp'n, Doc. 26), and the CFPB replied (Reply, Doc. 28).  Also

4  before the Court is Future Income Payments' Motion to Stay Case.  (Mot., Doc. 27; Opp'n,

5  Doc. 39; Reply, Doc. 44.)  For the following reasons, the Court GRANTS the CFPB's

6  Petition and DENIES Future Income Payments' Motion to Stay Case.

7  **I.     BACKGROUND**

8    In the past few years, the income stream market has come under sharp scrutiny for

9  allegedly marketing loans at undisclosed, exorbitant interest rates to vulnerable

10  populations, including veterans and the elderly.  *See John Doe Co. v. CFPB*, 849 F.3d

11  1129, 1130 (D.C. Cir. 2017); U.S. Gov't Accountability Off., GAO-14-420, Pension

12  Advance Transactions: Questionable Business Practices Identified (2014),

13  http://www.gao.gov/assets/670/663800.pdf.  Like several other purchasers and sellers of

14  income streams, Future Income Payments has been the subject of investigations by state

15  regulators in New York, California, Massachusetts, Iowa, Washington, and North

16  Carolina.  (*See* N.Y. Consent Order, Exh. 4, Doc. 29-4; C.A. Stip. Desist and Refrain

17  Order, Exh. 5, Doc. 29-5; C.A. Desist and Refrain Order, Doc. 29-6; Mass. Press Release,

18  Exh. 7, Doc. 29-7; Iowa Assurance of Voluntary Compliance, Exh. 8, Doc. 29-8; Wash.

19  Consent Order, Exh. 9, Doc. 29-9; N.C. Settlement Agreement, Exh. 10, Doc. 29-10.)  In

20  February 2017, the City of Los Angeles filed suit against Future Income Payments,

21  alleging that the company charges usurious, hidden interest rates as high as ninety-six

22  percent, prohibits early termination of the loans (thereby ensuring that consumers cannot

23  avoid the high interest rates), and employs abusive collection practices.  (City of Los

24  Angeles Compl. ¶¶ 2-4, Exh. 11, Doc. 29-11.)

25    On November 23, 2016, the CFPB served this Civil Investigative Demand on

26  Future Income Payments, demanding information related to the company's income-

27  stream-advance transactions.  (*See* CID at 2-5, Exh. A, Doc. 5.)  The CFPB explained

28  that the purpose of its investigation was:

1    to determine whether financial-services companies or other persons have

2    engaged or are engaging in unlawful acts and practices in connection with

3    offering or providing extensions of credit or financial advisory services

4    related to transactions involving pensions, annuities, settlements, or other

5    future-income streams in violation of §§ 1031 and 1036 of the Consumer

6    Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536, or any other

7    Federal consumer-financial law. The purpose of this investigation is also to

8    determine whether Bureau action to obtain legal or equitable relief would be

9    in the public interest.

10   (CID at 1, Exh. A.)  The CFPB's nine interrogatories, two requests for written reports, and

11   ten requests for documents seek information regarding Future Income Payments' structure,

12   investors, marketing, business relationships, bank accounts, collection efforts, financial

13   records, involvement in other government investigations, and income-stream-advance

14   transactions.  (*See id.* at 2-5.)

15          Future Income Payments submitted a petition to set aside the CID on December 13,

16   2016, which the CFPB denied on January 5, 2017.  (Hartmann Decl. ¶¶ 5-6, Doc. 4.)  Four

17   days later, Future Income Payments filed suit in the United States District Court for the

18   District of Columbia to enjoin the CFPB from taking any adverse action against it and to

19   allow the company to proceed anonymously.  (*Id.* ¶ 10.)  The district court denied Future

20   Income Payments' request to prohibit the CFPB from taking any action against the

21   company but enjoined the agency from naming it in any public filing until March 3, 2017.

22   (Order, Exh. A, Doc. 4.)  On March 3, the D.C. Circuit denied Future Income Payment's

23   request for an emergency stay pending appeal.  *See John Doe Co.*, 849 F.3d 1129.

24          The CFPB filed this Petition to Enforce the Civil Investigative Demand under seal on

25   February 21, 2017.  (Pet.)  After the district court's injunction lapsed in *John Doe Co.*, the

26   Court unsealed this action and issued a revised briefing schedule.  (Order, Doc. 21.)

27

28

## II.     DISCUSSION

To determine whether to enforce an administrative subpoena, a court considers "[1] whether Congress has granted the authority to investigate; [2] whether procedural requirements have been followed; and [3] whether the evidence is relevant and material to the investigation." *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994). If the agency has satisfied these prerequisites, "the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d at 1428. A subpoenaed party is also free to raise any constitutional challenges to the CFPB's authority to issue a CID, which this Court reviews on a plenary basis. 12 U.S.C. §§ 5562(e), (h)(1); *John Doe Co.*, 849 F.3d at 1131.

Future Income Payments contends that the CID should not be enforced because (1) the CFPB is structurally unconstitutional, (2) the CID seeks information outside of the CFPB's jurisdiction, and (3) the CID is overbroad. (*See generally* Opp'n.) Under the doctrine of constitutional avoidance, the Court first considers whether Future Income Payments' statutory arguments have merit before turning to its constitutional challenge.

### A.     CFPB's Jurisdiction

A party cannot defeat enforcement of an administrative subpoena by raising fact-bound challenges related to "coverage or compliance with the law." *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001); *see also Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 508-09 (1943). This Circuit has recognized a narrow exception to this rule for "jurisdictional" challenges, but even then a court's inquiry focuses solely on whether "there is some 'plausible' ground for jurisdiction." *Karuk Tribe Hous. Auth.*, 260 F.3d at 1077 (citation omitted). In other words, as long as the agency's jurisdiction is not "plainly lacking," a court should enforce an administrative subpoena, even if the respondent raises a reasonable argument that the subpoena is beyond an agency's statutory mandate. *Id.*; *see also CFPB v. Great Plains Lending, LLC*, 846 F.3d 1049, 1051, 1058

1   (9th Cir. 2017) (applying the "plainly lacking" standard to a CID issued by the CFPB).

2   The "plainly lacking" standard is necessarily a low bar to avoid tasking courts and parties

3   with resolving complex hypotheticals before an agency even decides whether to take an

4   enforcement action.

5          Much of the Ninth Circuit's jurisprudence applying this "jurisdictional" exception

6   involves Native American tribes' challenges to whether they should be considered

7   "persons" under various statutes.  *See, e.g.*, *Great Plains Lending, LLC*, 846 F.3d at 1053

8   (whether a tribe is a "person" under the Consumer Financial Protection Act); *NLRB v.*

9   *Chapa De Indian Health Program, Inc.*, 316 F.3d 995, 998 (9th Cir. 2003) (National Labor

10  Relations Act); *Karuk Tribe Hous. Auth.*, 260 F.3d at 1077 (Occupational Safety and

11  Health Act).  In *Karuk Tribe Housing Authority*, the Ninth Circuit concluded that a Native

12  American tribe's challenge to the EEOC's authority was jurisdictional and the agency's

13  authority was plainly lacking.  *Id.* at 1077-78, 1083.  *Karuk Tribe Housing Authority*

14  contrasted the tribe's argument that the Age Discrimination in Employment Act simply did

15  not apply to tribal governments with other cases where "the subpoenaed parties could,

16  *under some set of facts*, be found in violation of federal law . . . ."  *Id.* at 1078 (emphasis

17  added).  By contrast, in *Children's Hospital Medical Center of Northern California*, the

18  Ninth Circuit sitting *en banc* held that a *res judicata* defense did not warrant denying

19  enforcement of an administrative subpoena.  719 F.2d at 1427-30.  Although the

20  subpoenaed party's *res judicata* argument raised "an important[] and . . . difficult question

21  . . . worthy of serious consideration," a party cannot avoid complying with an

22  administrative subpoena based on "what normally would be a defense to an action by the

23  agency."  *Id.* at 1427.  Even if the *res judicata* defense could be construed as jurisdictional,

24  the *en banc* court noted that the EEOC's jurisdiction was not "plainly lacking,"

25  considering how unsettled the law was regarding the preclusive effects of prior class

26  actions on subsequent class claims.  *Id.* at 1430.

27         Future Income Payments posits that the CFPB lacks jurisdiction because the

28  company's future-income streams are not a consumer financial product or service.  (Opp'n

1    at 17-18.)  Although couched as a challenge to the CFPB's jurisdiction, this argument

2    really invites a fact-intensive inquiry into whether the company's products qualify as loans

3    under the Truth in Lending Act.  Because Future Income Payment's challenge concerns the

4    "coverage" of the applicable consumer financial statutes and the company's compliance

5    with the law, it cannot raise this issue to prevent enforcement of the CFPB's administrative

6    subpoena.  *See Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d at 1429; *Endicott Johnson*

7    *Corp.*, 317 U.S. at 508-09.  Even assuming *arguendo* that Future Income Payments'

8    challenge implicates the CFPB's jurisdiction, the two unpublished district court decisions

9    that the company relies on hardly establish that the agency's jurisdiction in "plainly

10    lacking."  (*See* Opp'n at 18 (citing *Capela v. J.G. Wentworth, LLC*, No. CV09-882

11    SJF/WDW, 2009 WL 3128003, at *9-10 (E.D.N.Y. Sept. 24, 2009); *Reed v. Val-Chris*

12    *Investments, Inc.*, No. 11CV371 BEN WMC, 2011 WL 6028001, at *2-3 (S.D. Cal. Dec.

13    5, 2011).)  Not only do those cases involve different transactions (specifically, a certain

14    structured settlement and an assignment), but at least six state regulators and the City of

15    Los Angeles have found that Future Income Payments' products *do* constitute loans.  (*See*

16    *generally* N.Y. Consent Order, Exh. 4, Doc. 29-4; Stip. Desist and Refrain Order, Exh. 5,

17    Doc. 29-5; C.A. Desist and Refrain Order, Doc. 29-6; Mass. Press Release, Exh. 7, Doc.

18    29-7; Iowa Assurance of Voluntary Compliance, Exh. 8, Doc. 29-8; Wash. Consent Order,

19    Exh. 9, Doc. 29-9; N.C. Settlement Agreement, Doc. 29-10; City of Los Angeles Compl.,

20    Exh. 11, Doc. 29-11.)  Suffice to say, the CFPB has "some 'plausible' ground for

21    jurisdiction" over Future Income Payments' income-stream-advance transactions.  *See*

22    *Karuk Tribe Hous. Auth.*, 260 F.3d at 1077 (citation omitted).

23        **B.**      **Scope of the CID**

24       Future Income Payments next argues that the CID seeks information outside Future

25    Income Payments' possession, custody, or control; is temporally overbroad; seeks

26    irrelevant information; and imposes an undue burden on the company.  (*See* Opp'n at 19-

27    25.)  None of these arguments are persuasive.

28

1      **1.  Possession, Custody, or Control**

2           Relying on the CID's definition of "Company," "you," and "your" and its definition

3      of "affiliate," Future Income Payments contends that the CID "is overly broad to the extent

4      it seeks documents from other companies who may share a common owner with FIP, but

5      have no relation whatsoever to the stated purpose in the CID."  (Opp'n at 20-22.)

6           The CID defines "Company," "you," and "your" as:

7           Future Income Payments, LLC, formerly known as Pensions, Annuities and

8           Settlements, LLC, any successor in interest, and any parent companies, wholly

9           or  partially  owned  subsidiaries,  unincorporated  divisions,  joint  ventures,

10          operations under assumed names, and affiliates, and all principals, directors,

11          officers,  owners,  employees,  agents,  representatives,  consultants,  attorneys,

12          accountants,  independent  contractors,  and  other  persons  working  for  or  on

13          behalf of the foregoing.

14     (CID Def. E, Exh. A.)  Read purely in isolation, this definition could conceivably be

15     construed to request information outside of Future Income Payments' possession, custody,

16     or control.  But Instruction I clarifies that "[t]his CID covers materials and information *in*

17     *your possession, custody, or control,* including but not limited to documents in the

18     possession, custody, or control of your attorneys, accountants, other agents or consultants,

19     directors, officers and employees."  (CID Inst. I, Exh. A. (emphasis added).)  In keeping

20     with traditional principles of agency law, a principal-agent relationship or a contractual

21     right is sufficient to establish "control."  *See, e.g.*, *St. Jude Med. S.C., Inc. v. Janssen-*

22     *Counotte*, 104 F. Supp. 3d 1150, 1159 (D. Or. 2015); *Allen v. Woodford*, No.

23     CVF051104OWWLJO, 2007 WL 309945, at *2 (E.D. Cal. Jan. 30, 2007); *Rosie D. v.*

24     *Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003); *see also* Restatement (Third) of

25     Agency § 8.11 (2006) ("An agent has a duty to use reasonable effort to provide the

26     principal with facts that the agent knows, has reason to know, or should know when . . .

27     subject to any manifestation by the principal, the agent knows or has reason to know that

28     the principal would wish to have the facts or the facts are material to the agent's duties to

1  the principal . . . .").  Thus, properly construed, the CID does not seek—nor will this Court

2  require—Future Income Payments to produce documents outside its possession, custody,

3  or control.

4       Conversely, as long as the information that the CFPB seeks is responsive and within

5  Future Income Payments' possession, custody, or control, it is properly within the scope of

6  the CID.  As the CFPB notes, Future Income Payments may operate through a complex

7  web of legal entities.  (Reply at 19-20.)  A consent decree Future Income Payments entered

8  with the New York State Department of Financial Services in October 2016 reveals that

9  Future Income Payments has at least three marketing affiliates—Cash Flow Investment

10 Partners, LLC, BuySellAnnuity, Inc., and Pension Advance, LLC—that operate out of the

11 company's address in Irvine, California.  (N.Y. Consent Order at 2-3, Exh. 4.)  The CFPB

12 also points to the City of Los Angeles' contention that Future Income Payments' owner

13 and manager, Scott Kohn, "operate[s] his pension loan and investment scheme" through a

14 "web of entities," including Future Income Payments, LLC; BuySell Annuity, Inc.; Cash

15 Flow Investment Partners, LLC (a Delaware LLC); Cash Flow Investment Partners LLC (a

16 California LLC); Pension Advance LLC; PAS California, LLC; and London Square

17 Specialty Services, LLC.  (Reply at 19; City of Los Angeles Compl. ¶¶ 7-9, Exh. 11.)  The

18 CFPB convincingly argues that, to avoid Future Income Payments potentially evading

19 compliance with the CID through this network of legal entities, the administrative

20 subpoena must sweep broadly to include information held by the persons and entities

21 identified in the CID's definition of "Company," "you," or "your," insofar as that

22 information is within Future Income Payments' possession, custody, or control.  (Reply at

23 19-20.)

24       Future Income Payments arguments to the contrary are unavailing.  The company

25 does not identify a single legal entity that would be subject to the CID that does not have

26 information relevant "to the stated purpose of the CID."  (*See* Opp'n at 20.)  And limiting

27 the scope of the CID, as Future Income Payments proposes, to "FIP and any of its

28 predecessors and successors, relating to lending or financial advisory services involving

1   the purchase of future income streams" (*see* Opp'n at 17-18) would potentially result in the

2   company producing nothing because it claims that it does not offer any consumer financial

3   products or services.

4            **2.  Temporal Scope of the CID**

5            Future Income Payments claims that the CID is temporally overbroad because the

6   "Applicable Period for Responsive Materials" extends from "December 1, 2011 until the

7   date of full and complete compliance with this CID."  (CID Inst. C, Exh. A.)  The

8   applicable period, the company argues, should be narrowed to December 1, 2013 to align

9   with the applicable statute of limitations.

10           Future Income Payments' argument is incorrect in two respects.  First, the statute of

11  limitations provided in 12 U.S.C. § 5564 commences upon "the date of discovery of the

12  violation to which an action relates." 12 U.S.C. § 5564(g).  So, even if this statute of

13  limitations would apply to an enforcement action taken by CPFB (and not all enforcement

14  actions are subject to this limitations period), Future Income Payments' argument assumes

15  that the CFPB knew all along of the company's potential violations of the consumer

16  financial protection laws.  Second, the standard for determining whether the temporal

17  scope of a CID is proper "is whether such information is relevant to conduct for which

18  liability can be imposed."  *CFPB v. Harbour Portfolio Advisors, LLC*, No. 16-14183, 2017

19  WL 631914, at \*5 (E.D. Mich. Feb. 16, 2017); *see also NLRB v. Line*, 50 F.3d 311, 314-15

20  (5th Cir. 1995) (affirming enforcement of an administrative subpoena extending five years

21  back when the applicable statute of limitations was six months); *F.T.C. v. Texaco, Inc.*,

22  555 F.2d 862, 882 (D.C. Cir. 1977).  Thus, even assuming that the only actionable conduct

23  occurred within the past three years, the CFPB may properly demand information for an

24  additional two years because this information is reasonably relevant to conduct occurring

25  within the statute of limitations period.  *See Line*, 50 F.3d at 314-15.

26           **3.  Relevance of the Information Sought**

27           Future Income Payments also contends that the CID seeks irrelevant information.

28  (Opp'n at 23-24.)  The only examples the company identifies, however, are Interrogatory

1    No. 5 and Request for Written Report No. 1.  (*See id.*)  These requests seek Future Income

2    Payments' financial data "relating to income-stream-advance transactions" and bank

3    accounts "held in the name of or for the benefit of the Company."  (CID Rpt. 1, Exh. A,

4    Intrg. 5, Exh. A.)  Contrary to Future Income Payments' argument, the company's gross

5    revenue, expenses, and net profit from income-stream-advance transactions are highly

6    relevant to whether it or other entities have engaged in illegal practices "related to

7    transactions involving pensions, annuities, settlements or other future-income streams" and

8    whether an enforcement action "would be in the public interest."  (CID at 1, Exh. A.)  In

9    determining whether to take an enforcement action, an agency may consider the scale of

10   the potential violations and the defendant's profit from these actions.  Likewise, Future

11   Income Payments' bank information will help the CFPB determine whether the company

12   uses a complex web of legal entities to operate.

13          **4.  Undue Burden**

14          Finally, Future Income Payments asserts that complying with the CID would

15   impose an undue, or "extreme" burden on the company.  (Opp'n at 24-25.)  The company

16   may have waived this argument by failing to raise it during the administrative meet-and-

17   confer process or in its administrative appeal.  *See N. Plains Res. Council, Inc. v. Surface*

18   *Transp. Bd.*, 668 F.3d 1067, 1081 (9th Cir. 2011) ("A party waives arguments that are not

19   raised during the administrative process."); *see also* 12 C.F.R. § 1080.6(c)(3).  But even

20   considering the argument on its merits, Future Income Payments has failed to demonstrate

21   that the CID "is overbroad or unduly burdensome."  *See Children's Hosp. Med. Ctr. of N.*

22   *Cal.*, 719 F.2d at 1428 (noting that the party opposing enforcement bears the burden of

23   showing that compliance would impose an undue burden).  To show that an administrative

24   subpoena imposes an undue burden, a subpoenaed party cannot merely point to an

25   agency's "extensive" requests or assert that compliance would be costly.  *See, e.g., FDIC*

26   *v. Garner*, 126 F.3d 1138, 1145-46 (9th Cir. 1997); *NLRB v. Vista Del Sol Health Servs.*,

27   Inc., 40 F. Supp. 3d 1238, 1265-66 (C.D. Cal. 2014); *CFTC v. Ekasala*, 62 F. Supp. 3d 88,

28   94 (D.D.C. 2014).  Instead, the party opposing enforcement must supply evidence

1   establishing that compliance "threatens to unduly disrupt or seriously hinder normal

2   operations of a business." *Texaco*, 555 F.2d at 882; *see Ekasala*, 62 F. Supp. 3d at 94

3   ("The standard for showing that a request is unduly burdensome . . . is a high one.").

4          The only concrete example Future Income Payments provides to support its undue

5   burden argument is that the agency seeks "all" of certain types of documents, such as its

6   agreements with consumers.  (Opp'n at 24-25.)  These requests, Future Income Payments

7   contends, should be limited to "'documents sufficient to show' a particular practice."

8   (Opp'n at 24.)  But crucially absent from Future Income Payment's Opposition is any

9   evidence showing that the administrative subpoena imposes an undue burden, such as a

10  declaration specifying the estimated cost of compliance, the effect of compliance on Future

11  Income Payments' operations, the number of responsive documents, or some other

12  indication of the burden of complying.  Future Income Payments' bald assertions that

13  compliance would result in "significant business consequences" do not establish an undue

14  burden.  (*See* Opp'n at 24-25.)  Besides, the CFPB's requests are proportionate to the

15  potential scale of the violations at issue in this investigation.  *See Garner*, 126 F.3d at

16  1146.

17         In sum, the CFPB's CID is appropriate in scope and duration, seeks only relevant

18  information, and does not impose an undue burden on Future Income Payments.

19         **C.      CFPB's Constitutionality**

20         Because none of Future Income Payments' other arguments have merit, the Court

21  must turn to the company's constitutional challenges.  For the following reasons, the Court

22  finds that the CFPB Director's for-cause protection from removal is constitutional, and,

23  even if the agency were unconstitutionally structured, the enforcement of a subpoena

24  issued by the agency would not be unconstitutional.

25             **1.   The CFPB's For-Cause Removal Protection Does Not Violate the**

26                    **Constitution.**

27         The Take Care Clause provides that the President "shall take Care that the Laws be

28  faithfully executed . . . ."  U.S. Const. art. II, § 3.  The Supreme Court has construed this

1  "simple but delphic" provision, along with the Vesting and Appointments Clauses, as

2  circumscribing Congress's ability to impose restrictions on the President's authority to

3  remove executive officials.  Jack Goldsmith & John F. Manning, *The Protean Take Care*

4  *Clause*, 164 U. Pa. L. Rev. 1835, 1836-37 (2016).

5      In *Myers v. United States*, the Supreme Court held that a statute barring the

6  President from removing the Postmaster General unless the President secured the advice

7  and consent of the Senate impermissibly usurped the President's executive authority.  272

8  U.S. 52, 107, 176 (1926).  *Myers*'s seemingly expansive holding, however, was

9  substantially narrowed less than ten years later in *Humphrey's Executor v. United States*,

10  295 U.S. 602 (1935).  There, the Court affirmed the constitutionality of the Federal Trade

11  Commission Act's for-cause removal provision, which provided that the President could

12  remove FTC commissioners only "for inefficiency, neglect of duty, or malfeasance in

13  office."  *Id.* at 620.  The President, the Court held, has no "illimitable power" to remove

14  officers charged with running "quasi legislative or quasi judicial agencies."  *Id.* at 629.  To

15  the contrary, Congress may require these administrative agencies "to act in discharge of

16  their duties independently of executive control," and "that authority includes, as an

17  appropriate incident, power to fix the period during which they shall continue, and to

18  forbid their removal except for cause in the meantime."  *Id.*

19      Though *Humphrey's Executor* distinguished *Myers* as addressing a "purely

20  executive" office, the Supreme Court has since recognized that the inquiry cannot be

21  reduced to whether the role is "purely executive" or holds some "quasi-judicial" or "quasi-

22  legislative" characteristics.  *Morrison v. Olson*, 487 U.S. 654, 689 (1988).  As the Supreme

23  Court has observed, the "the powers of the FTC at the time of *Humphrey's Executor* would

24  at the present time be considered 'executive,' at least to some degree," and many

25  government functions cannot be neatly classified as "quasi-legislative" or "purely

26  executive."  *Id.* at 689 n.28.  The guiding question instead is whether an officer's for-cause

27  removal protection "interfere[s] with the President's exercise of the 'executive power' and

28  his constitutionally appointed duty to 'take care that the laws be faithfully executed' under

1    Article II." *Id.* at 690.  Thus, Congress can establish, for instance, an independent

2    prosecutor who can be removed only for "good cause."  *Id.* at 692-93.  But Congress

3    cannot insulate officers behind two levels of for-cause protection from removal because

4    such a "diffusion of accountability" unduly interferes with "the President's 'constitutional

5    obligation to ensure the faithful execution of the laws.'"  *Free Enter. Fund v. Pub. Co.*

6    *Accounting Oversight Bd.*, 561 U.S. 477, 484, 497 (2010) (quoting *Morrison*, 487 U.S. at

7    693).

8          The CFPB executes essentially the same responsibilities that the FTC did at the

9    time of *Humphrey's Executor*.  Like the FTC in 1935, the CFPB has the power to conduct

10   administrative adjudications, bring civil enforcement proceedings, promulgate regulations,

11   conduct public investigations, and issue reports on its findings.  *Compare* 12 U.S.C. §§

12   5511-12, 5532, 5534, 5562-64 *with* Federal Trade Commission Act, H.R. 15613, 63d

13   Cong, 38 Stat. 717 §§ 5-6, 9-10 (1914).  The CFPB is headed by a Director, who serves a

14   five-year term upon appointment by the President and confirmation by the Senate.  12

15   U.S.C. §§ 5491(b)(1), (2).  The CFPB's Director may be removed only for "inefficiency,

16   neglect of duty, or malfeasance in office," *id.* § 5491(c)(3), the same degree of protection

17   afforded to FTC commissioners.

18         In *CFPB v. Morgan Drexen, Inc.*, this Court held that the CFPB Director's for-

19   cause removal protection "when considered as a part of the CFPB's overall structure and

20   mission, does not impermissibly interfere with the President's power to assure that the

21   laws be faithfully executed."  60 F. Supp. 3d 1082, 1088 (C.D. Cal. 2014).  The CFPB's

22   authority closely parallels the FTC's powers considered in *Humphrey's Executor*. That the

23   FTC was (and still is) run by a five-member commission, while the CFPB has a director

24   makes no constitutional difference.  *Id.* at 1087-88.  *Humphrey's Executor* did not

25   distinguish *Myers* based on the agencies' different leadership structure—and with good

26   reason: To revamp a five-member board like the FTC, the President "would have been

27   required to affect five separate for cause removals, while only one is required in order to

28   change the leadership of the CFPB."  *Id.* at 1088.  Further, compared to the CFPB

1    Director's five-year term, the President's authority over the FTC is more circumscribed

2    because its commissioners serve staggered, seven-year terms.  *Id.* at 1088 n.3.  Thus, if the

3    proper inquiry is whether the for-cause removal protection afforded to the CFPB Director

4    interferes with the President's duty "to take care that the laws are faithfully executed,"

5    *Morrison*, 487 U.S. at 690, the CFPB's structure is at least as constitutionally sound as the

6    FTC.  *Morgan Drexen*, 60 F. Supp. 3d at 1088.  And, in any event, there is no textual basis

7    in the Constitution for concluding that independent agencies must be led by multimember

8    commissions.  *See id.* at 1092.

9        Future Income Payments argues that this Court's decision in *Morgan Drexen*

10   deserves reconsideration because "courts . . . have agreed since October 2016 that the

11   Bureau is structurally unconstitutional."  (Opp'n. at 8 (capitalization removed).)  What

12   Future Income Payments portrays as a wall of precedent is a vacated 2-1 decision, *PHH*

13   *Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016), *reh'g en banc granted, order vacated* (Feb.

14   16, 2017), and a district court decision following *PHH Corp.*, *see CFPB v. Fomichev*, No.

15   2:16-cv-2724 (C.D. Cal. Nov. 17, 2016) (Doc. 40).

16       As an initial matter, the *PHH* majority acknowledged that "there is no meaningful

17   difference in responsiveness and accountability to the President" between an agency

18   headed by a commission and a director.  839 F.3d at 32.  That is enough to end the inquiry.

19   Under the Supreme Court's precedent, a for-cause removal provision does not offend the

20   Constitution unless it "interfere[s] with the President's exercise of the 'executive power'

21   and his constitutionally appointed duty to 'take care that the laws be faithfully executed'

22   under Article II."  *Morrison*, 487 U.S. at 690.  *PHH* omits any reference to this holding

23   from *Morrison*, relies heavily on the dissent in that decision, and quotes law review articles

24   calling *Humphrey's Executor* "egregious" and "[r]emarkabl[e]."  839 F.3d at 34 n.15.  The

25   Supreme Court's decisions, however, "remain binding precedent until [it] see[s] fit to

26   reconsider them, regardless of whether subsequent cases have raised doubts about their

27   continuing vitality."  *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (quoting *Hohn v. United*

28   *States*, 524 U.S. 236, 253 (1998)).

1    In *PHH*, the panel majority declared the CFPB Director's for-cause removal

2  protection unconstitutional based on two propositions: First, that the purported lack of

3  historical precedent for the CFPB directorship's for-cause protection from removal

4  doomed its constitutionality, and, second, that "multi-member independent agencies are

5  superior to single-Director independent agencies in preventing arbitrary decisionmaking

6  and abuse of power, and thereby protecting individual liberty." *See* 839 F.3d at 21-30.

7  Neither is persuasive.

8    There are at least three other active government agencies that share the CFPB's

9  structure: the Social Security Administration, the Office of Special Counsel, and the

10  Federal Housing Financial Agency (which oversees Fannie Mae, Freddie Mac, and eleven

11  Federal Home Loan Banks).  *See* 5 U.S.C. § 1211(b) (Office of Special Counsel); 12

12  U.S.C. § 4512(b)(2) (Federal Housing Finance Agency); 42 U.S.C. § 902(a)(3) (Social

13  Security Administration).  A fourth director-led agency, the Office of the Comptroller of

14  the Currency, likely enjoys for-cause protection from removal as well.  12 U.S.C. § 2

15  (requiring the President to "communicate[]" "reasons" for removal of the Comptroller to

16  the Senate); 44 U.S.C. § 3502(5) (including the Office of the Comptroller of the Currency

17  among the agencies listed in the definition of an "independent regulatory agency").  More

18  fundamentally, the distinction *PHH* drew between multimember boards and directors is

19  overly simplistic: Many independent agencies headed by multimember bodies have

20  "chairs" that, by statute or practice, wield substantial control over the agency's

21  decisionmaking.  *See* Marshall J. Breger & Gary J. Edles, *Established by Practice: The*

22  *Theory and Operation of Independent Federal Agencies*, 52 Admin. L. Rev. 1111, 1177-78

23  (2000) (concluding that in some independent agencies headed by multimember boards,

24  "the combination of political prestige and managerial authority accord . . . agency

25  chairmen the power to dominate and control their agencies' agendas").  For instance,

26  though the Federal Reserve has a Board of Governors, the Federal Reserve Chair wields

27  considerable influence over rate-making and bank oversight, such that her statements can

28  move markets.  *See* Tony Caporale & Kevin B. Grier, *A Political Model of Monetary*

*Policy with Application to the Real Fed Funds Rate*, 41 J.L. & Econ. 409, 422-23 (1998) (observing that empirical evidence shows that "changes in the identity of the Fed chair significantly change monetary policy").

*PHH* attempted to distinguish the Social Security Administration as a direct analogue by observing that the agency lacked "law enforcement" authority.  839 F.3d at 19.  Yet *PHH* does not explain why the CFPB's civil enforcement authority implicates "the core of the executive power" any more than the Social Security Administration's power to determine benefits for millions.  *See id.*  Staffed with more than 65,000 federal employees and responsible for a budget of over 1 *trillion* dollars, the Social Security Administration handles "5.7 million retirement, survivors, and Medicare claims; over 2.8 million Social Security and SSI initial disability claims; and nearly 216,000 SSI aged claims."  *See* Social Security Admin., FY 2017 Budget Overview 1, 3 (2016) https://www.ssa.gov/budget/FY17Files/2017BO.pdf.  As *Morrison* observed, the difficulty with identifying "core" executive functions is that the same duties may seem "executive" in certain circumstances and "legislative" or "judicial" in others.  *See* 487 U.S. at 689 n.28 (noting the tension in what duties *Bowsher v. Synar*, *Buckley v. Valeo,* and *Humphrey's Executor* characterized as "judicial," "legislative," "executive," or "administrative").

Even if there were no direct precedent to the CFPB, "[o]ur constitutional principles of separated powers are not violated . . . by mere anomaly or innovation."  *Mistretta v. United States*, 488 U.S. 361, 385 (1989).  To state an obvious but important point, "[e]verything is new the first time it is enacted, and many different kinds of laws are not similar to laws that were enacted in the first several sessions of Congress."  Leah M. Litman, *Debunking Anti-Novelty*, 66 Duke L. Rev. 1407, 1459-65 (2017) (cataloguing the ways in which federal institutions have grown more complex or confronted new challenges).  As our economy, society, and scientific knowledge have developed, Congress has endeavored to craft new institutions to tackle the challenges that modern society presents.  If novelty alone were the proper measure of a statute's lawfulness, Congress would be powerless to fashion any modern administrative agency, much less one with the

1  for-cause removal protection sanctioned in *Humphrey's Executor*.  *See* William H. Hardie
2  III, Note, *The Independent Agency After Bowsher v. Synar-Alive and Kicking*, 40 Vand. L.
3  Rev. 903, 906–07 (1987) (observing that the Interstate Commerce Commission, created in
4  1887, represented the first federal agency charged exclusively with regulating a particular
5  industry and, with its combination of rulemaking, adjudicatory, and enforcement authority,
6  became the "model for the modern administrative agency").

7       Nor is there any guarantee that multimember bodies will better protect individual
8  liberty "by preventing arbitrary decisionmaking and abuse of power."  *See PHH*, 839 F.3d
9  at 25-30.  Though *PHH* portrays multimember independent agencies as objectively
10  superior to those led by a director, there are many potentially competing trade-offs and no
11  empirical evidence that establishes the superiority of either.  In theory, commissions are
12  thought to be more deliberative while director-led organizations are considered more
13  nimble.  *See, e.g.*, Rachel E. Barkow, *Insulating Agencies: Avoiding Capture Through*
14  *Institutional Design*, 89 Tex. L. Rev. 15, 37-38, 71 n.319 (2010).  These characteristics do
15  not translate neatly into greater (or lesser) accountability: A commission, for instance, may
16  be less responsive to the Executive or the public due to internal divisions or sheer
17  sluggishness.  For the same reason, the effect (if any) of an independent agency's
18  leadership structure on the risk of capture by industry remains unknown.  *PHH* also
19  focuses principally on the differences between *independent* commissions and *independent*
20  directorships.  If—as *PHH* urges—agencies should be structured to avoid the improper
21  exercise of "law enforcement" authority, many would reason that either an independent
22  commission or an independent directorship would be preferable to an agency fully exposed
23  to political winds.  *See, e.g.*, David M. Driesen, *Firing U.S. Attorneys: An Essay*, 60
24  Admin. L. Rev. 707, 711 (2008).

25       Moreover, Congress devised many tools, some novel, to ensure the CFPB remains
26  accountable.  Unlike other financial regulators, the CFPB undergoes annual audits by the
27  Government Accountability Office, 12 U.S.C. § 5496a, and has a capped budget from the
28  Federal Reserve System, *id.* § 5497.  *See* Adam J. Levitin, *The Consumer Financial*

1  *Protection Bureau: An Introduction*, 32 Rev. Banking & Fin. L. 321, 343 (2013).  Besides

2  judicial review under the Administrative Procedure Act and the Small Business Regulatory

3  Enforcement Fairness Act, CFPB's rules may be stayed or overridden by the Financial

4  Stability Oversight Council, 12 U.S.C. § 5513.  The agency has no authority to bring

5  criminal prosecutions, *see id.* § 5566, and has only limited authority to represent itself

6  before the Supreme Court, *id.* § 5564(e).  The CFPB must submit extensive semi-annual

7  reports to Congress and the President that detail, among other activities, any anticipated

8  rulemaking or orders.  *Id.* § 5496; *see* Michael S. Barr, Comment, *Accountability and*

9  *Independence in Financial Regulation: Checks and Balances, Public Engagement, and*

10  *Other Innovations*, 78 Law & Contemp. Probs. 119, 126 (2015) (asserting that the

11  architects of the CFPB, including the author, created an "extensive array of reporting

12  requirements [to] . . . force[] the Bureau to demonstrate to Congress on a continuous basis

13  that it is working to accomplish its mission").  In addition, Congress required the CFPB to

14  establish a system to provide timely responses "to complaints against, or inquiries

15  concerning" providers of consumer financial products.  12 U.S.C. § 5534.

16      At bottom, whether to structure an independent agency as a multimember or

17  director-led body depends on the proper weighing of the advantages and drawbacks of

18  each structure.  But neither the text of the Constitution nor any Supreme Court precedent

19  supports drawing a constitutional distinction between multimember and director-led

20  independent agencies, so the question is properly reserved for the political branches and

21  the democratic process.

### 2.  Even if the CFPB Director's For-Cause Removal Protection Were Unconstitutional, the CID Should Be Enforced.

24      Even if the CFPB Director's statutory protection from removal were

25  unconstitutional under *PHH*'s reasoning, the CFPB's administrative subpoena should

26  nevertheless be enforced.  For Future Income Payments to defeat enforcement of the CID

27  based on the agency's structure, the company "would have to show that only the Executive

28  Branch can demand information from regulated businesses or take such investigative

-20-    18

1 steps." *John Doe Co.*, 849 F.3d at 1133.  Yet every precedent from the Supreme Court

2 suggests otherwise.  *See id*.  Congress unquestionably has the authority to issue subpoenas.

3 *See, e.g.*, *Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 504 (1975).  And in *Buckley*

4 *v. Valeo*, the Supreme Court, although striking down the process for appointing

5 commissioners to the Federal Election Commission, stressed that "[i]nsofar as the powers

6 confided in the Commission are essentially of an investigative and informative nature, . . .

7 there can be no question that the Commission as presently constituted may exercise them."

8 424 U.S. 1, 137 (1976).  Indeed, Congress has granted every director-run independent

9 agency the power to issue administrative subpoenas.  *See* 5 U.S.C. § 1212(b)(2) (Office of

10 Special Counsel); 12 U.S.C. § 4641 (Federal Housing Finance Agency); 42 U.S.C. §

11 405(d) (Social Security Administration); *see also* 12 U.S.C. § 481 (providing that OCC

12 bank examiners "shall have power to make a thorough examination").  A finding that the

13 CFPB cannot exercise the subpoena power would logically preclude these other agencies

14 from exercising their statutory authority as well.  Thus, even if the CFPB Director's for-

15 cause removal protection violates separation-of-powers principles, the agency could still

16 lawfully exercise the subpoena power against Future Income Payments.

17       **D.**    <u>**Request for a Stay**</u>

18       Separately, Future Income Payments seeks a stay of this case pending the resolution

19 of the request for an interlocutory appeal in *CFPB v. CashCall* and the *en banc*

20 proceedings in *PHH Corp. v. CFPB*.  (Stay Mot. at 1, Doc. 27.)  After Future Income

21 Payments filed its Motion, the Ninth Circuit denied interlocutory review in *CashCall*.

22 (Ninth Circuit Order, Exh. 4, Doc. 39-5.)  As for staying this case pending the resolution of

23 *PHH Corp.*, the Court finds a stay unwarranted for the reasons identified below.

24       In determining whether to exercise its inherent authority to stay a case, a court

25 should weigh three salient considerations:

26       [1] the possible damage which may result from the granting of a stay, [2] the

27       hardship or inequity which a party may suffer in being required to go forward,

28       and [3] the orderly course of justice measured in terms of the simplifying or

1  complicating of issues, proof, and questions of law which could be expected

2  to result from a stay.

3  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  Under the first factor, "the Court

4  begins with the reasonable assumption that a stay—while not 'invariably improper or

5  inappropriate'—'inherently increases the risk that witnesses' memories will fade and

6  evidence will become stale.'"  *Brenner v. Procter & Gamble Co.*, No. SACV 16-1093-JLS-

7  JCGX, 2016 WL 8192946, at *10 (C.D. Cal. Oct. 20, 2016) (quoting *Blue Cross & Blue*

8  *Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir.

9  2007)).  This concern carries particular force when a stay would impede a government

10  investigation.  *See John Doe Co. v. CFPB*, No. CV 17-0049 (RC), 2017 WL 663528, at *7

11  (D.D.C. Feb. 17, 2017) (observing that "the public has a strong interest in the vigorous

12  enforcement of consumer protection laws"); *FTC v. Sequoia One, LLC*, No. 2:15-CV-

13  01512-JCM-CWH, 2015 WL 9462082, at *4 (D. Nev. Dec. 23, 2015).  Future Income

14  Payments, therefore, bears the burden of demonstrating a "clear case of hardship or

15  inequity" under the other two factors.  *Brenner*, 2016 WL 8192946, at *10 (quoting *Landis*

16  *v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

17      The DC Circuit and a district court have already rejected Future Income Payments'

18  claims that having to participate in a government investigation that the company believes to

19  transgress separation-of-powers principles constitutes irreparable harm.  *See John Doe Co.*,

20  849 F.3d at 1135 (rebuffing Future Income Payments' position that "any alleged

21  separation-of-powers injury is by its very nature irreparable"); *John Doe Co.*, 2017 WL

22  663528, at *6 (same).  Similarly, in *Tilton v. SEC*, a challenge to the constitutionality of the

23  appointment of administrative law judges in the SEC, the Second Circuit held that "being

24  subjected to an unconstitutional administrative process" and enduring the "expense and

25  disruption" of these proceedings do not qualify as irreparable harm.  824 F.3d 276, 286 (2d

26  Cir. 2016); *see FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (holding that the

27  "expense and disruption" of defending oneself in "protracted adjudicatory proceedings" do

28  not amount not irreparable harm).  Future Income Payments' averred injury proves even

1   less compelling than those in *Tilton* because the CFPB has not brought an enforcement

2   action against it; absent a stay, Future Income Payments simply must comply with an

3   administrative subpoena.  And, for the reasons articulated already, Future Income

4   Payments is particularly unlikely to defeat enforcement of the CID based on its separation-

5   of-powers challenge because the Executive Branch does not retain exclusive control over

6   the subpoena power.  *See Buckley,* 424 U.S. at 137.  Accordingly, Future Income Payments

7   would not incur substantial prejudice from having to comply with the administrative

8   subpoena.

9         Most importantly, Future Income Payments has not articulated clearly what purpose

10  would be served by granting a stay.  The Ninth Circuit has denied interlocutory review in

11  *CashCall*.  (Ninth Circuit Order, Exh. 4.)  While others may seek interlocutory review on

12  the CFPB's constitutionality, the Court cannot hold this CID in perpetual limbo pending an

13  interlocutory appeal that the Ninth Circuit may never grant.  As for the *en banc*

14  proceedings in *PHH*, any decision by the DC Circuit would be only persuasive authority,

15  and the DC Circuit may very well elect, under the doctrine of constitutional avoidance, not

16  to reach the constitution question pressed by the parties.  The DC Circuit and district court

17  in Future Income Payments' parallel *John Doe Co.* suit have recognized that the

18  company's constitutional challenge should be resolved in this proceeding, or—if the CFPB

19  ultimately elects to take such action—in an enforcement action.  *John Doe Co.*, 849 F.3d at

20  1134; *John Doe Co.*, 2017 WL 663528, at *6.

21        In short, any prejudice Future Income Payments would incur absent a stay and the

22  hypothetical possibility of further appellate guidance do not justify the substantial prejudice

23  that a stay would inflict on this government investigation.  Accordingly, Future Income

24  Payments' Motion to Stay Case is DENIED.

25  **III.    CONCLUSION**

26        The CFPB's Petition to Enforce the Civil Investigative Demand is GRANTED, and

27  Future Income Payments' Motion to Stay Case is DENIED.  Future Income Payments is

28  hereby ORDERED to comply with the CID within fifteen days of this Order or at a later

1    date as may be established by the CFPB or the Court.

2

3

4    DATED:  May 17, 2017

5                                                        HON. JOSEPHINE L. STATON
                                                         UNITED STATES DISTRICT JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHRISTOPHER JONES (admitted *Pro Hac Vice*)
cjones@wcsr.com
SAMUEL B. HARTZELL (admitted *Pro Hac Vice*)
shartzell@wcsr.com
**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Tel: (919) 755-2112
Fax: (919)755-6772

ISABELLE L. ORD (BAR NO. 198224)
isabelle.ord@dlapiper.com
JULIA M. BRIGHTON (BAR NO. 280418)
julia.brighton@dlapiper.com
JESSE STEINBACH (BAR NO. 278923)
jesse.steinbach@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105
Telephone: (415) 836-2500
Facsimile: (415) 836-2501

Attorneys for Respondent
FUTURE INCOME PAYMENTS, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, <br><br> Petitioner, <br><br> v. <br><br> FUTURE INCOME PAYMENTS, LLC, <br><br> Respondent. | CASE NO. 8:17-cv-00303-JLS-SS <br><br> **OPPOSITION TO PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND OF RESPONDENT FUTURE INCOME PAYMENTS, LLC** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................... 1

II.    BACKGROUND ..................................................................................... 2

III.    ARGUMENT .......................................................................................... 3

    A.    This Investigation is Unconstitutional ...................................... 3

        (1)    Courts and the United States Have Agreed Since October 2016 that the Bureau is Structurally Unconstitutional .............. 8

        (2)    The Bureau is Unconstitutional ................................. 12

        (3)    The Bureau Cannot Bring this Action ....................... 16

    B.    Even If the Bureau Is Lawful, the CID Seeks Information Outside the Bureau's Jurisdiction ....................................... 17

    C.    The CID Is Extraordinarily Broad and Unduly Burdensome, and Should Be Significantly Narrowed if Enforced ................................ 19

        (1)    The CID Improperly Seeks Documents Beyond FIP's Possession, Custody or Control ................................. 20

        (2)    The Temporal Scope of the CID Is Overly Broad .................. 22

        (3)    Many of the Requests Are Not Relevant or Material to the Stated Purpose of the Investigation .......................... 23

        (4)    The CID Creates an Extreme Burden on FIP .......................... 24

IV.    CONCLUSION ....................................................................................... 25

i

I.    **INTRODUCTION**

Since October 2016, the United States, a D.C. Circuit panel, and Judge Philip S. Gutierrez of this Court have concluded that Petitioner Consumer Financial Protection Bureau (the "CFPB" or "Bureau") is structurally unconstitutional.[1] These conclusions have not deterred the Bureau. It believes, as it recently argued before Judge Gutierrez, that it can pursue enforcement actions "despite any possible constitutional infirmity."[2] The Bureau is wrong: constitutionality is a prerequisite to the use of federal power against the public, and there is no such thing as a harmless separation-of-powers violation.

The Bureau is now wrongfully pursuing enforcement of a sweeping—and unconstitutional—civil investigative demand (the "CID") to Respondent Future Income Payments, LLC ("FIP"). Under the CID, the Bureau is asking this Court to order FIP to produce virtually every business and financial record it has ever generated. The Court should decline to enforce the CID.

---

[1] *See* Br. of United States 5 n.1, Doc. No. 1666553, *PHH Corp. v. CFPB*, No. 15-1177 (D.C. Cir. filed Mar. 17, 2017) (Exhibit A to the Declaration of Samuel B. Hartzell, filed herewith (the "Hartzell Decl.")) ("[T]he CFPB's for-cause removal provision . . . is unconstitutional."); *PHH Corp. v. CFPB*, 839 F.3d 1, 36 (D.C. Cir. 2016) ("[T]he CFPB is unconstitutionally structured because it is an independent agency headed by a single Director."), *reh'g en banc granted*, 2017 WL 631740 (Feb. 16, 2017); Order Denying Defs.' Mot. Dismiss 7–8, Dkt. No. 40, *CFPB v. Fomichev*, No. 16-cv-02724 (C.D. Cal. Nov. 17, 2016) (Exhibit B to Hartzell Decl.) (adopting the D.C. Circuit's reasoning in *PHH* because it is "persuasive").

[2] CFPB's Opp'n Mot. Certify Interloc. Appeal 4, Dkt. No. 50, *Fomichev* (filed Mar. 6, 2017) (Exhibit C to Hartzell Decl.).

RESPONDENT'S OPP. TO PETITION
CASE NO. 8:17-CV-00303-JLS-SS
WEST\275734498.1

1        The CFPB cannot bring this action to enforce the CID unless and until the

2   Bureau's structure is constitutional, and it cannot voluntarily start operating

3   lawfully because the constitutional violation here is structural. Only Congress can

4   amend the Bureau's enabling legislation. While courts have the power to sever

5   unconstitutional provisions, they cannot use that power to transform the Bureau into

6   an agency fundamentally different from the one Congress created. In any event, no

7   remedy has been implemented. The CFPB's Director (the "Director") continues to

8   wield unchecked executive, legislative, and judicial powers free from presidential

9   supervision. This action is therefore illegitimate and the CID cannot be enforced.[3]

10  **II.   BACKGROUND**

11       FIP purchases portions of future income streams. When a person entitled to

12  receive periodic payments from a pension has a need for a substantial sum, he or

13  she can receive that money in exchange for selling an asset to FIP, namely a portion

14  of the income stream derived from pension payments. FIP is not a lender and does

15  not make loans, extend credit, or offer financial advisory services. FIP's business

16  has never been adjudicated to violate any law or regulation.

17

18  [3] The Bureau may not defend this action by claiming that it will ratify it if the
    Bureau ever becomes constitutionally structured. There is no guarantee that the

19  Bureau will ever become constitutional. But, even if it does, it cannot retroactively
    authorize this action to cure a past structural violation affecting the entire Bureau.

20  *Cf. CFPB v. Gordon*, 819 F.3d 1179, 1191–92 (9th Cir. 2016) (ratification of past
    enforcement action effective where "the CFPB had the authority to bring the action

21  *at the time*" (emphasis added)).

22

RESPONDENT'S OPP. TO PETITION
CASE NO. 8:17-CV-00303-JLS-SS
WEST\275734498.1

1    On November 23, 2016, the Bureau served the CID on FIP, with a stated

2    purpose of investigating whether "persons have engaged or are engaging in

3    unlawful acts and practices in connection with offering or providing extensions of

4    credit or financial advisory services." (CID Notification of Purpose, Dkt. No. 5, at

5    9.) FIP asked the Bureau to withdraw the CID because, among other reasons, the

6    Bureau's structure is unconstitutional. The Bureau denied that request on January 5,

7    2017. (Carbis Decl. ¶ 9, Dkt. No. 5.) It determined that FIP's "constitutional

8    challenge [was] not properly raised . . . because government agencies may not

9    entertain a constitutional challenge to authorizing statutes." (Director's Order at 2

10   (internal quotation marks omitted), Dkt. No. 5, at 54.)

11   The Bureau filed its Petition to Enforce the CID (the "Petition") on February

12   21, 2017. (Dkt. No. 1.) This Court then directed FIP to file its opposition to that

13   Petition on or before March 20, 2017. (*See* Dkt. Nos. 9, 21.) FIP opposes the

14   Petition because (1) this investigation is unconstitutional, (2) the CID seeks

15   information outside the Bureau's jurisdiction, and (3) the CID is overly broad and

16   unduly burdensome.

17   **III.   ARGUMENT**

18       **A.    This Investigation is Unconstitutional**

19   In 2010, Congress established the CFPB as an independent agency headed by

20   single Director. *See* Consumer Financial Protection Act of 2010, Pub.L. 111-203,

21   Title X, § 1051 *et seq.*, July 21, 2010, 124 Stat. 2018. In so doing, Congress placed

22

– 3 –

1    massive legislative, executive, and judicial power "in the same hands," which is

2    "the very definition of tyranny." *In re Aiken Cty.*, 725 F.3d 255, 264 (D.C. Cir.

3    2013) (quoting The Federalist No. 47 (J. Madison)).

4    The Bureau exercises legislative power by enacting regulations with the force

5    of law, executive power by policing compliance with those regulations, and judicial

6    power by adjudicating enforcement actions and imposing sanctions on those found

7    to have violated those regulations. This accumulation of powers in the hands of one

8    independent Director violates Article II of the Constitution, particularly because the

9    Director controls a self-funding agency with wide-ranging executive powers.

10   Article II provides: "The executive Power shall be vested in a President of

11   the United States of America," U.S. Const. art. II, § 1, and the President "shall take

12   Care that the Laws be faithfully executed, *id.* § 3. Of course, the "President cannot

13   'take Care that the Laws be faithfully executed' if he cannot oversee the

14   faithfulness of the officers who execute them." *Free Enter. Fund v. Pub. Co.*

15   *Accounting Oversight Bd.*, 561 U.S. 477, 484 (2010). Accordingly, "the traditional

16   default rule" is that "removal is incident to the power of appointment." *Id.* at 509.

17   The President "must place in each member of his official family, and his chief

18   executive subordinates, implicit faith." *Myers v. United States*, 272 U.S. 52, 134

19   (1926). "The moment that he loses confidence in the intelligence, ability, judgment,

20   or loyalty of any one of them, he must have the power to remove him without

21   delay." *Id.*

22

– 4 –

1    Despite the importance of this removal power, it "is not without limit." *Free

2    Enter. Fund*, 561 U.S. at 483. In *Humphrey's Executor v. United States*, 295 U.S.

3    602 (1935), the Supreme Court "held that Congress can, *under certain*

4    *circumstances*, create independent agencies run by principal officers appointed by

5    the President, whom the President may not remove at will but only for good cause."

6    *Free Enter. Fund*, 561 U.S. at 483 (emphasis added). The Supreme Court has

7    recognized only two circumstances: an independent agency headed by "a body of

8    experts appointed by law and informed by experience," *Humphrey's Ex'r*, 295 U.S.

9    at 624 (internal quotation marks omitted); and an inferior officer with a narrow

10   jurisdiction and limited tenure, *see Morrison v. Olson*, 487 U.S. 654, 672 (1988).

11   The Court has since restricted *Humphrey's Executor* and *Morrison* to their facts and

12   hinted that they may no longer be viable.[4]

13       In *Free Enterprise Fund*, the Supreme Court considered whether Congress

14   could restrict the President's "ability to remove a principal officer, who is in turn

15   restricted in his ability to remove an inferior officer." 561 U.S. at 484. The Court

16   held that these "dual for-cause limitations on the removal of [inferior officers]

17   contravene the Constitution's separation of powers." *Id*. at 492. In coming to this

18   ───────────────────

19   [4] In *Free Enterprise Fund*, the Supreme Court stated that it would not "reexamine" *Humphrey's Executor* or *Morrison* because the parties had not asked it to do so. 561 U.S. at 483; *cf. In re Aiken Cty.*, 645 F.3d at 444 (Kavanaugh, J., concurring)

20   (noting that the Supreme Court's "rhetoric and reasoning" in *Free Enterprise Fund* are "notably in tension with *Humphrey's Executor*").

21

22                                – 5 –

1   conclusion, the Court adopted Judge Kavanaugh's observation—which he made in

2   dissent in the court of appeals before the case reached the Supreme Court—that the

3   "most telling indication of the severe constitutional problem . . . is the lack of

4   historical precedent." *Id.* at 505 (quoting *Free Enter. Fund v. Pub. Co. Accounting*

5   *Oversight Bd.*, 537 F.3d 667, 699 (D.C. Cir. 2008) (Kavanaugh, J, dissenting)).

6       The Bureau suffers from that same lack of historical precedent. "Congress

7   has created agencies with a single head subject to for-cause removal on only three

8   other occasions." Br. of United States 17, Doc. No. 1666553, *PHH Corp. v. CFPB*,

9   No. 15-1177 (D.C. Cir. filed Mar 17, 2017) (Exhibit A to Hartzell Decl.). "*First*, in

10  1978, Congress established the Office of Special Counsel as an entity with a single

11  head subject to removal only for cause." *Id.* "*Second*, in 1994, Congress made the

12  Social Security Administration a separate agency headed by a single Commissioner

13  appointed for a term of six years and removable only for cause." *Id.* at 18. "*Third*,

14  the Federal Housing Finance Agency . . . , which Congress created during the 2008

15  financial crisis to oversee Fannie Mae and Freddie Mac, is also headed by a single

16  Director subject to removal only for cause." *Id.*

17      As the United States explains, these examples establish that "until relatively

18  recently all independent agencies have been structured as multi-member

19  commissions." *Id.* at 17. In addition, the three recently created single-director

20  independent agencies have been controversial and, unlike the Bureau, cannot bring

21  law enforcement actions against the public. *See id.* at 17–19. This is not a

22                                  – 6 –

1  meaningless limitation—the law enforcement aspect of the Bureau's power is the

2  executive function that most obviously infringes upon the power of the President.

3     The CFPB's structure is an unconstitutional departure from historical

4  practice. The Bureau has broad authority "to prescribe rules or issue orders or

5  guidelines pursuant to any Federal consumer financial law" previously administered

6  by seven different agencies. *See* 12 U.S.C. § 5581(a). It can "conduct hearings and

7  adjudication proceedings," *id.* § 5563(a), and "issue subpoenas," *id.* § 5562(b)(1).

8     In addition, the CFPB has the power to pursue a broad range of legal and

9  equitable relief, including "civil money penalties." *Id.* § 5565(a)(2). It can pursue

10  this relief in "a United States district court or in any court of competent jurisdiction

11  of a state in a district in which the defendant is located or resides or is doing

12  business," *id.* § 5564(f), or by conducting its own "adjudication proceedings"

13  subject to deferential Administrative Procedure Act review, *id.* § 5563(a).

14     The Bureau wields all of its powers free from supervision by Congress or the

15  President. Congress does not supervise the Bureau because the Director sets the

16  Bureau's budget, up to 12 percent of the total operating expenses of the Federal

17  Reserve System, and it can demand that sum from the Board of Governors. *See id.*

18  § 5497(a). The Committees on Appropriations of the House of Representatives and

19  Senate are prohibited from reviewing these funding decisions. *Id.* § 5497(a)(2)(C).

20  Similarly, the President cannot supervise the Bureau because its Director serves a

21  five-year term, *id.* § 5491(c)(1), and he or she is removable by the President only

22

– 7 –

1    "for inefficiency, neglect of duty, or malfeasance in office" (*i.e.*, only for cause), *id.*

2    § 5491(c)(3). The Director's power is therefore essentially unchecked.

3           Thus, the Director has the unilateral power to enact regulations with the force

4    of law, to police compliance with those regulations, and to adjudicate enforcement

5    actions and impose sanctions on those he decides have violated those regulations—

6    all free from congressional or presidential supervision. This concentration of power

7    in the Director "is contrary to Article II's vesting of the executive power in the

8    President." *Free Enter. Fund*, 561 U.S. at 484.

9                   **(1)    Courts and the United States Have Agreed Since October
                            2016 that the Bureau is Structurally Unconstitutional**

10          Since Congress established the Bureau, litigants across the country have

11   challenged the CFPB's constitutionality. This Court was the first to reach the issue.

12   In *CFPB v. Morgan Drexen, Inc.*, the Court concluded "that the structure of the

13   CFPB, considered as a whole, does not impermissibly interfere with the President's

14   executive power." 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014). The Court also

15   rejected the defendants' argument that *Humphrey's Executor* is distinguishable

16   because it concerned a multi-member commission, not a single-director structure.[5]

17

18   _____

19   [5] FIP explains in Part II.C that *Humphrey's Executor* is not controlling here. In
     short, "[t]he principles animating the exception in *Humphrey's Executor* do not
20   apply when Congress carves off . . . quintessentially executive power and vests it in
     a single principal officer below the President who is not subject to the President's
21   control." Br. of United States 13.

22                                      – 8 –

1   *See id.* at 1087. Since that time, much has transpired to warrant a second

2   examination by this Court.

3       Judge Barker of the Southern District of Indiana was next to decide the issue.

4   After discussing the Supreme Court's removal jurisprudence, Judge Barker

5   concluded that the Director's powers—including the Director's "paradigmatic

6   'executive' powers" such as the "the authority to bring suit on behalf of the United

7   States"—are not "so great that the inability to remove him or her at whim fatally

8   undermines the President's constitutional prerogatives." *CFPB v. ITT Educ. Servs.,*

9   *Inc.*, No. 14-cv-292, 2015 WL 1013508, at *9 (S.D. Ind. Mar. 6, 2015).

10       In August 2016, Judge Walter of this Court rejected a similar challenge to the

11   Bureau's structure for "the reasons stated in *CFPB v. Morgan Drexen.*" Order

12   Granting CFPB's Mot. Summ. J. 15, Dkt. No. 213, *CFPB v. CashCall, Inc.*, No. 15-

13   cv-7522 (C.D. Cal. Aug. 31, 2016) (Exhibit D to Hartzell Decl.).

14       These early decisions assessing the constitutionality of the Bureau were

15   upended in October 2016, when the D.C. Circuit—the first and only appellate court

16   to reach the issue—held that "the CFPB is unconstitutionally structured because it

17   is an independent agency headed by a single Director." *PHH Corp. v. CFPB*, 839

18   F.3d 1, 36 (D.C. Cir. 2016), *reh'g en banc granted*, 2017 WL 631740 (Feb. 16,

19   2017) (oral argument to be held on May 24, 2017). Judges Kavanaugh and

20   Randolph found that Congress has made the Director "the single most powerful

21   official in the entire U.S. Government, other than the President," by giving him

22                   – 9 –

1    broad authority to interpret and enforce consumer protection law without imposing

2    any meaningful check on his exercise of that authority. *Id.* at 17. The panel

3    explained that this accumulation of power in the hands of a single, unelected, and

4    unaccountable Director "departs from settled historical practice regarding the

5    structure of independent agencies" and "that departure makes a significant

6    difference for the individual liberty protected by the Constitution's separation of

7    powers." *Id.* at 36.[6]

8          Roughly one month after the D.C. Circuit issued *PHH*, Judge Gutierrez held

9    that the Bureau is unconstitutionally structured. After reviewing *PHH*, *ITT*, and

10   *Morgan Drexen*, Judge Gutierrez determined that "the recent opinion of the D.C.

11   Circuit [was] most persuasive." Order Denying Defs.' Mot. Dismiss 7, Dkt. No. 40,

12   *CFPB v. Fomichev*, No. 16-cv-2724 (C.D. Cal. Nov. 17, 2016) (Exhibit B to

13   Hartzell Decl.). Nonetheless, Judge Gutierrez also held, there was no ongoing

14

_____

15   [6] While the D.C. Circuit has agreed to rehear *PHH en banc*, that decision should not
     be read as signaling disapproval of the panel's constitutional analysis. Rehearing *en
16   banc* is appropriate where "the proceeding involves a question of exceptional
     importance." Fed. R. App. P. 35(a)(2). The 101-page *PHH* decision is undoubtedly
17   important. Moreover, even if further review could be read as signaling disapproval
     of the panel's reasoning, it would not necessarily favor the Bureau. The D.C.
18   Circuit and Supreme Court may overrule the panel's decision to "narrowly strike
     down and sever the one for-cause removal provision that is the source of the
19   constitutional problem" rather than "strike down [the] whole [Dodd–Frank] Act" or
     "at least those statutory provisions creating the CFPB and defining the CFPB's
20   duties and authorities." *PHH Corp.*, 839 F.3d at 37. There is reason to adopt one of
     these broader approaches. Congress intended to create a self-funded independent
21   agency, not a self-funded executive agency.

22                                    – 10 –

1    constitutional problem because the D.C. Circuit had "severed the for-cause

2    provision from the law and allowed the CFPB to continue operations." *Id.* at 8.[7]

3          The *PHH* decision likewise persuaded the United States to change its

4    position on the Bureau's constitutionality. Before *PHH*, the government argued that

5    "the CFPB's for-cause removal provision is consistent with the Constitution." *See*

6    Br. of United States 5 n.1. "After reviewing the panel's opinion [in *PHH*] and

7    further considering the issue, the Department [of Justice] has concluded that the

8    better view is that the provision is unconstitutional." *Id.* The United States is urging

9    courts "not [to] extend the exception established by the Supreme Court in

10   *Humphrey's Executor*" because such extension would "undermine the general

11   constitutional rule that the President may remove principal officers at will." *Id.* at

12   19. Thus, the Bureau is attempting to wield federal executive power against FIP

13   while the United State is arguing that the Bureau is structurally unconstitutional.

---

[7] Judge Gutierrez's decision assumes implementation of the D.C. Circuit's remedy, which would have made the Director removable without cause. *See* Order Denying Defs.' Mot. Dismiss 8, Dkt. No. 40, *Fomichev* (stating that the "Director is now subject to direct removal by the President"); *accord CFPB v. NDG Financial Corp.*, No. 15-cv-5211, 2016 WL 7188792, at *21 (S.D.N.Y. Dec. 2, 2016) (making the same assumption without deciding whether the Bureau is constitutionally structured). In fact, the remedy has not been—and may never be—implemented. The D.C. Circuit agreed to rehear *PHH en banc*, and it ordered the parties to address whether "the proper remedy [for any constitutional violation is] to sever the for-cause provision of the [Consumer Financial Protection Act of 2010]." Order, *PHH*, 2017 WL 631740 (D.C. Cir. Feb. 16, 2017) (*per curiam*). Severing the for-cause provision is not a proper remedy because it would effectively rewrite the Act. Such "judicial legislation" oversteps the authority of Congress and would create a new and distinct separation of powers concern.

– 11 –

1    The *PHH* decision caused a sea change in jurisprudence on the question of

2    the Bureau's structure. Before the D.C. Circuit issued that opinion, three district

3    courts concluded that the Bureau is constitutionally structured. In the months after

4    *PHH*, the only court to reach the constitutional question found the D.C. Circuit's

5    analysis to be the most persuasive. The *PHH* Court's reasoning also caused the

6    United States to change its position and conclude that the Bureau is

7    unconstitutionally structured. This Court should arrive at the same conclusion.

8                          **(2)     The Bureau is Unconstitutional**

9    The structure of the CFPB is unconstitutional—and *Humphrey's Executor* is

10   not controlling—for at least eight reasons.

11   *First*, the Bureau does not fit within either of the two recognized exceptions

12   to "the traditional default rule" that "removal is incident to the power of

13   appointment." *Free Enter. Fund*, 561 U.S. at 509. The Bureau is not headed by "a

14   body of experts," nor is the Director an inferior officer with a narrow jurisdiction

15   and limited tenure. *Humphrey's Ex'r*, 295 U.S. at 624. Accordingly, the Director

16   must be removable without cause. *See* Br. of United States 19 ("Neither history nor

17   precedent suggests that *Humphrey's Executor* should be extended to the CFPB.").

18   *Second*, the structure of the Bureau is unprecedented. To paraphrase the

19   Supreme Court, the "most telling indication of the severe constitutional problem

20   with the [CFPB] is the lack of historical precedent for this entity." *Free Enter.*

21   *Fund*, 561 U.S. at 505 (internal quotation marks omitted); *see also PHH*, 839 F.3d

22                                – 12 –

1   at 21 ("The CFPB is exceptional in our constitutional structure and unprecedented

2   in our constitutional history."). The "[l]ong settled and established practice" of

3   creating multi-member independent agencies "is a consideration of great weight in

4   a proper interpretation of constitutional provisions." *NLRB v. Noel Canning*, 134 S.

5   Ct. 2550, 2559 (2014) (internal quotation marks omitted).

6     *Third*, "multi-member independent agencies help prevent arbitrary

7   decisionmaking and abuses of power . . . because they do not concentrate power in

8   the hands of one individual." *PHH*, 839 F.3d at 26. "[W]hereas a multi-headed

9   commission generally must engage in at least some degree of deliberation and

10  collaboration, which tend toward compromise, a single Director can decisively

11  implement his own views and exercise discretion without these structural

12  constraints." Br. of United States 15. In addition, "the multi-member structure—and

13  its inherent requirement for compromise and consensus—will tend to lead to

14  decisions that are not as extreme, idiosyncratic, or otherwise off the rails" and it

15  will "guard against 'capture' of—that is, undue influence over—the independent

16  agencies by regulated entities or interest groups." *PHH*, 839 F.3d at 27. These

17  features of a multi-member agency are preconditions to independence. As Justice

18  Breyer explained in his dissent in *Free Enterprise Fund*, "agency independence is a

19  function of several different factors," including "its composition as a multimember

20  bipartisan board." 561 U.S. at 547.

21

22           – 13 –

1    *Fourth*, and relatedly, Congress has not made the Bureau "nonpartisan" or

2    ensured that it will "act with entire impartiality." *Humphrey's Ex'r*, 295 U.S. at

3    624. Congress required that the Federal Trade Commission, Securities and

4    Exchange Commission, Consumer Product Safety Commission, and Federal Energy

5    Regulatory Commission all include members of both political parties. *See* 15

6    U.S.C. §§ 41, 78d(a), 2053(c); 42 U.S.C. § 7171(b)(1). The Bureau, by contrast, is

7    "open to the suspicion of partisan direction" because only one party can control the

8    Bureau at a time. *Humphrey's Ex'r*, 295 U.S. at 625.

9        *Fifth*, the Director serves a five-year term that extends "until a successor has

10   been appointed and qualified." 12 U.S.C. § 5491(c)(2). If a President waited until

11   the last year of his or her term to nominate a Director, that President could prevent a

12   successor from ever installing a replacement. Similarly, Congress could keep a

13   Director in office indefinitely by refusing to qualify the President's choice of a new

14   Director. The President would also be powerless to fire the Director without cause.

15   *Id*. § 5491(c)(3). This potential that a President would have no influence over the

16   CFPB—an agency wielding executive power—distinguishes the Bureau from all

17   other multi-member independent agencies. For example, the FTC (the agency at

18   issue in *Humphrey's Executor*) is headed by commissioners who serve staggered

19   terms, thus guaranteeing the President the opportunity to nominate multiple

20   commissioners. *See* 15 U.S.C. § 41. In addition, the President can choose the

21   "chairman from the Commission's membership." *Id*.

22                      – 14 –

1    *Sixth*, *Humphrey's Executor* analyzed "an administrative body [the FTC]

2    created by Congress to carry into effect *legislative* policies embodied in the

3    [enabling] statute in accordance with the *legislative* standard therein prescribed, and

4    to perform other specified duties as a *legislative* or as a judicial aid." 295 U.S. at

5    628 (emphasis added). In other words, the FTC "act[ed] as a legislative agency"

6    subject to legislative control. *Id*. The Bureau, by contrast, wields quintessentially

7    executive powers and is not subject to legislative (or executive) oversight.

8    *Seventh*, the Bureau is self-funding and has no obligation "to consult with or

9    obtain the consent or approval of the Director of the Office of Management and

10   Budget" (OMB) when determining its budget. 12 U.S.C. § 5497(a)(4)(E). This lack

11   of reliance on OMB further insulates the Bureau from executive supervision

12   because, when "agencies must rely on OMB for budget requests, the President has a

13   huge lever of power over the agency, *whether or not the head of the agency is*

14   *removable at will*." Rachel E. Barkow, *Insulating Agencies: Avoiding Capture*

15   *Through Institutional Design*, 89 Tex. L. Rev. 15, 42–43 (2010) (emphasis added).

16   Similarly, under § 5497, Congress cannot rein in the Bureau by limiting its funding.

17   *Eighth*, "the degree of agency discretion that is acceptable varies according to

18   the scope of the power congressionally conferred." *Whitman v. Am. Trucking*

19   *Associations*, 531 U.S. 457, 475 (2001). The Bureau's broad powers and

20   unprecedented independence, when viewed in concert, exceed permissible bounds.

21   "[J]ust because two structural features raise no constitutional concerns

22

– 15 –

1   independently does not mean Congress may combine them in a single statute. *Ass'n*

2   *of Am. Railroads v. U.S. Dep't of Transp.,* 721 F.3d 666, 673 (D.C. Cir. 2013),

3   *vacated on other grounds*, 135 S. Ct. 1225 (2015).

4         The Bureau's constitutional defects are so pervasive that this Court cannot

5   render the Bureau's structure constitutional by excising the offending provisions

6   from the Consumer Financial Protection Act of 2010. The Court would have to

7   rewrite the Act, which it cannot do since revising legislation is the sole province of

8   Congress. Moreover, even if the constitutional violation were limited to the for-

9   cause removal provision, merely striking that provision is insufficient because the

10  resulting agency would not "function in a manner consistent with the intent of

11  Congress." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (emphasis

12  omitted). Congress intended to create an independent agency that sets its own

13  budget and wields vast powers, many of which were formerly held by multi-

14  member independent agencies such as the FTC. There is no reason to believe that

15  Congress would have given all of these powers to an agency under the President's

16  control, and striking an offending provision will not cure the Constitutional defects

17  in the Bureau's structure.

18        **(3)   The Bureau Cannot Bring this Action**

19        As an unconstitutional agency, the Bureau "lacks authority to bring this

20  enforcement action." *FEC v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C.

21  Cir. 1993). The Court should deny the Bureau's Petition and dismiss this case

22

RESPONDENT'S OPP. TO PETITION
CASE NO. 8:17-CV-00303-JLS-SS
WEST\275734498.1

1  because the CFPB's powers can "be enforced only by a constitutional agency

2  accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.[8]

3         **B.**    **Even If the Bureau Is Lawful, the CID Seeks Information Outside the Bureau's Jurisdiction**

4       "[A] CID may be challenged if the scope of the demand is jurisdictionally

5  defective." *Associated Container Transp., Ltd. v. United States*, 502 F. Supp. 505,

6  510 (S.D.N.Y. 1980). The Dodd-Frank Act limits the Bureau to "regulat[ing] the

7  offering and provision of consumer financial products or services under the Federal

8  consumer financial laws." *CFPB v. Accrediting Council for Indep. Colleges & Sch.*,

9  183 F. Supp. 3d 79, 82 (D.D.C. 2016) (quoting 12 U.S.C. § 5491(a)). "[T]he CFPB

10  investigative authority is limited to inquiries to determine whether there has been a

11  violation of any consumer financial laws." *Id*. at 83. The CID falls outside the

12  Bureau's jurisdiction because FIP is not offering a "consumer financial product" or

13  "service." The CID relies on the faulty assumption that the sale of an asset—a

14  future-income stream—results in a loan or a consumer financial product or service

15  under 12 U.S.C. § 5481(15)(A)(i). It does not, and the Bureau has never adjudicated

16  this issue.

17  _____

18  [8] The Bureau's inability to enforce the CID does not depend on FIP showing that the Bureau's unconstitutional structure has affected its conduct. The "doctrine of

19  separation of powers is a *structural safeguard* rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified." *Plaut v.*

20  *Spendthrift Farm, Inc.*, 514 U.S. 211, 239 (1995). Governmental decisions tainted by a structural violation are "subject to automatic reversal." *United States v. Yepiz*,

21  844 F.3d 1070, 1085 (9th Cir. 2016).

22

1   serve a CID on FIP, it should require the Bureau to reissue the CID, correcting its

2   egregious deficiencies and overreaching requests, including by limiting its inquiry

3   to "documents sufficient to show" the information requested rather than requiring

4   FIP to produce "every" piece of paper that may be even vaguely related to a topic.

5        There are significant business consequences that the overly broad CID

6   ignores in making its sweeping demands. More importantly, the Bureau's structural

7   defects require it to stand down until the constitutional issue is resolved. Any other

8   result would wrongfully drag FIP through a wildly aggressive and burdensome

9   fishing expedition that could have a dire impact on FIP's business and reputation.

10  There can be no remedy for the incalculable harm to FIP if the Bureau proceeds

11  while under a darkening constitutional cloud.

12  **IV.   CONCLUSION**

13       For the foregoing reasons, this Court should deny the Bureau's request to

14  enforce the CID and dismiss this action.[11]

15                               Respectfully submitted,

16  Dated: March 20, 2017

17  **WOMBLE CARLYLE                DLA PIPER LLP (US)**
    **SANDRIDGE & RICE LLP**

18  By: */s/ Christopher W. Jones*      By: */s/ Isabelle L. Ord*

19  Attorneys for Respondent Future Income Payments, LLC

    _____

20  [11] The Court may choose to hold this case in abeyance pending a decision by the
    D.C. or Ninth Circuits on the Bureau's constitutionality. FIP will soon file a motion
    to stay this case pending those and other decisions.

21

22                               – 25 –



Consumer Financial
Protection Bureau

1700 G Street NW, Washington, DC 20552

November 23, 2016

<u>Via E-Mail and Certified Mail</u>

Future Income Payments, LLC
Attn: Mr. Paul Young
3579 E. Foothill Blvd, #390
Pasadena, CA 91107

Re:    Civil Investigative Demand served on Future Income Payments, LLC on
       November 23, 2016

Dear Mr. Young:

    Attached is a civil investigative demand (CID) issued to Future Income Payments, LLC by the Consumer Financial Protection Bureau (Bureau) under 12 C.F.R. § 1080.6 and § 1052(c) of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5562. This CID is issued as part of an investigation being conducted jointly by the Bureau and the Office of the Los Angeles City Attorney.

    Rule 1080.6(c) of the Bureau's Rules Relating to Investigations requires that you contact me as soon as possible to schedule a meeting (by telephone or in person) to be held within ten calendar days of receipt of this CID in order to discuss and attempt to resolve all issues regarding timely compliance with this demand. 12 C.F.R. § 1080.6(c); see also Instruction B. The rule requires that you make available at this meeting personnel with the knowledge necessary to resolve any such issues. Please be prepared to discuss your planned compliance schedule, and whether it is possible to tier your production by providing portions of the response prior to the due date.

    Please contact me immediately to schedule a meeting, which must be held within ten (10) days of the date of issue of this CID. My telephone number is 415-645-6615. I look forward to your call.

Sincerely,

Alanna B.    Digitally signed by Alanna B.
Carbis       Carbis
             Date: 2016.11.23 10:23:10
             -08'00'

Alanna Carbis
Enforcement Attorney

Attachment

cc: Future Income Payments, LLC (3535 E. Coast Hwy, #119, Corona Del Mar, CA 92625)

 **Consumer Financial Protection Bureau**

United States of America
Consumer Financial Protection Bureau

# Civil Investigative Demand

**To** **Future Income Payments, LLC**
**Attn: Mr. Paul Young**
**3579 E. Foothill Blvd, #390**
**Pasadena, CA 91107**

This demand is issued pursuant to Section 1052 of the Consumer Financial Protection Act of 2010 and 12 C.F.R. Part 1080 to determine whether there is or has been a violation of any laws enforced by the Bureau of Consumer Financial Protection.

## Action Required (choose all that apply)

☐ **Appear and Provide Oral Testimony**

| Location of Investigational Hearing | Date and Time of Investigational Hearing |
|---|---|
| | |
| | Bureau Investigators |
| | |

☑ **Produce Documents and/or Tangible Things**, as set forth in the attached document, by the following date   **12/14/2016**

☑ **Provide Written Reports and/or Answers to Questions**, as set forth in the attached document, by the following date   **12/14/2016**

## Notification of Purpose Pursuant to 12 C.F.R. § 1080.5

The purpose of this investigation is to determine whether financial-services companies or other persons have engaged or are engaging in unlawful acts and practices in connection with offering or providing extensions of credit or financial advisory services related to transactions involving pensions, annuities, settlements, or other future-income streams in violation of §§ 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536, or any other Federal consumer-financial law. The purpose of this investigation is also to determine whether Bureau action to obtain legal or equitable relief would be in the public interest.

| Custodian / Deputy Custodian | Bureau Counsel |
|---|---|
| Jeffrey Paul Ehrlich/Maria Ardike<br>Consumer Financial Protection Bureau | Alanna B. Carbis/Leanne Hartmann |

| Date Issued | Signature | |
|---|---|---|
| 11/23/2016 | **Jeffrey Paul Ehrlich** | Digitally signed by Jeffrey Paul Ehrlich<br>Date: 2016.11.23 13:14:49 -05'00' |
| | **Name / Title**   Jeffrey Paul Ehrlich/ Deputy Enforcement Director | |

**Service**
The delivery of this demand to you by any method prescribed by the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5562, is legal service. If you fail to comply with this demand, the Bureau may seek a court order requiring your compliance.

**Travel Expenses**
Request a travel voucher to claim compensation to which you are entitled as a witness before the Bureau pursuant to Section 1052 of the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5562.

**Right to Regulatory Enforcement Fairness**
The CFPB is committed to fair regulatory enforcement. If you are a small business under Small Business Administration standards, you have a right to contact the Small Business Administration's National Ombudsman at 1-888-REGFAIR (1-888-734-3247) or www.sba.gov/ombudsman regarding the fairness of the compliance and enforcement activities of the agency. You should understand, however, that the National Ombudsman cannot change, stop, or delay a federal agency enforcement action.

**Paperwork Reduction Act**
This demand does not require approval by OMB under the Paperwork Reduction Act of 1980.

## CIVIL INVESTIGATIVE DEMAND FOR
## PRODUCTION OF DOCUMENTS, WRITTEN REPORTS, AND ANSWERS TO
## INTERROGATORIES

**I.    Requests.**

### Interrogatories

1.  Identify all past and present employees of the Company, providing their titles, describing their roles, and listing the dates of their employment.

2.  Identify all persons who contracted with the Company to acquire the rights to income-stream payments.

3.  Identify all uniform resource locators (URLs), web addresses, or domain names owned, controlled, or used by, or otherwise associated with, the Company, its parents, subsidiaries, or affiliates.

4.  Identify all third parties with whom the Company contracts or otherwise has a business relationship relating to income-stream-advance transactions, including, but not limited to, lead generators, debt collectors, advertising agencies, persons that refer consumers to the Company, and persons to whom the Company refers consumers.

5.  Identify all bank accounts held in the name of or for the benefit of the Company.

6.  Identify all investigations, enforcement or other actions that have been brought against the Company by any government or private party, and provide the name of the initiating party, the type of action, and the current status of the matter, including a description of the resolution, if any.

7.  Identify all actions in bankruptcy proceedings initiated by the Company or any investor in an income-stream-advance transaction against any consumer who has obtained an income-stream advance from you.

8.  Identify all persons who participated in responding to this CID and the specific tasks performed by each person.

9.  If, for any request, there are documents that would have been responsive but that are now unavailable, identify each document and its last known location or custodian, and explain why the document cannot be produced.

## Requests for Written Reports

1. In an Excel spreadsheet similar to the format below, produce the following information for each month and calendar year during the applicable period:

    i. The Company's gross revenue from all products and services relating to income-stream-advance transactions, including but not limited to any fees or interest charged, directly or indirectly, to consumers or other parties, referral fees, rebates, discounts, or tie-ins to other business arrangements;

    ii. The Company's expenses from all products and services relating to income-stream-advance transactions; and,

    iii. The Company's net profit from all products and services relating to income-stream-advance transactions.

| Month, Year | The Company's gross revenue from all products and services relating to income-stream-advance transactions, including but not limited to any fees or interest charged, directly or indirectly, to consumers or other parties, referral fees, rebates, discounts, or tie-ins to other business arrangements | The Company's expenses from all products and services relating to income-stream-advance transactions | The Company's net profit from all products and services relating to income-stream-advance transactions |
|---|---|---|---|
| | | | |

2. In an Excel spreadsheet similar to the format below, produce the following information for each contract or agreement relating to an income-stream-advance transaction (a) entered into during the applicable period between you and a consumer or (b) whose terms involve payments or other actions within the applicable period, including those that would otherwise fall outside of the applicable period but for an outstanding balance:

    i. Contract number (or other unique identifier);

    ii. Consumer's name and contact information;

    iii. Date contract was executed;

    iv. The total amount of any payment to the consumer;

    v. Date by which the consumer is required to make all payments called for under the contract;

    vi. The total amount the consumer is required to pay under the contract, including any fees, interest, and other direct or indirect charges or expenses; and,

    vii. The total amount the consumer has currently paid you.

| Contract number (or other unique identifier) | Consumer's name and contact information | Date contract was executed | The total amount of any payment to the consumer | Date by which the consumer is required to make all payments called for under the contract | The total amount the consumer is required to pay under the contract, including any fees, interest, and other direct or indirect charges or expenses | The total amount the consumer has currently paid you |
|---|---|---|---|---|---|---|
| | | | | | | |

## Requests for Documents

1. Documents sufficient to show the corporate structure, organizational structure, personnel hierarchy, and operations of the Company and its parents, subsidiaries, and affiliates, including corporate and organizational charts, operating agreements, shareholder agreements, bylaws, articles of incorporation, articles of organization, and documents filed with government agencies.

2. All applications completed by consumers for any income-stream-advance transaction and all quotes or decision letters provided by the Company in response, including applications, quotes and decision letters that fall outside of the applicable period but relate to income-stream-advance transactions that occurred, were paid off, or had outstanding balances during the applicable period.

3. All contracts and agreements executed by the Company for all products and services relating to income-stream advances, including contracts and agreements whose terms involve payments or other actions within the applicable period or that were executed before the applicable period but had an outstanding balance during the applicable period.

4. All documents that relate to the Company's requirements for individuals who enter into income-stream-advance transactions with the Company.

5. All documents showing the Company's refund policies and practices during the applicable period, including but not limited to documents that show any procedures that the Company requires consumers to follow to obtain refunds.

6. All rate sheets showing the terms on which the Company has engaged or offered to engage in income-stream-advance transactions, including all rate sheets relating to payments to and from consumers, and to the terms on which the Company markets, transfers, or sells the rights to income-stream payments to third parties.

7. All of the Company's advertising and promotional materials for all products and services relating to income-stream-advance transactions, including but not limited to website postings, newspaper advertisements, trade publications, telemarketing scripts, direct mail promotions, pre-approved promotions, electronic media, radio, television scripts, and any other targeted advertising.

8. All of the Company's training manuals and materials, including call scripts, related to advertising income-stream-advance transactions, purchasing or acquiring the rights to income-stream payments, collecting income-stream payments, and transferring or selling the rights to income-stream payments.

9. All documents discussing or reflecting complaints received by the Company relating to income-stream-advance transactions, including the Company's responses to such complaints.

10. All documents reflecting the Company's process and procedures for collecting overdue income-stream payments.

## II.   Definitions.

A.   **"Advertisement"** means any statement, illustration, depiction, or promotional material, whether in English or another language, that is designed to effect a sale or create interest in goods or services, regardless of where it appears.

B.   **"Affiliate"** means "any person that controls, is controlled by, or is under common control with another person." 12 U.S.C. § 5481(1).

C.   **"CID"** means the Civil Investigative Demand, including the Requests, Topics for Hearing, Definitions, and Instructions.

D.   **"CFPB"** or "**Bureau**" means the Bureau of Consumer Financial Protection.

E.   **"Company**" or "**you**" or "**your**" means Future Income Payments, LLC, formerly known as Pensions, Annuities and Settlements, LLC, any successor in interest, and any parent companies, wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all principals, directors, officers, owners, employees, agents, representatives, consultants, attorneys, accountants, independent contractors, and other persons working for or on behalf of the foregoing.

F.   **"Deputy Enforcement Director"** refers to a Deputy Assistant Director of the Office of Enforcement.

G.   **"Document"** means any written matter of every type and description, including electronically stored information. "Document" includes any non-identical copy (such as a draft or annotated copy) of another document.

H.     **"Electronically Stored Information,"** or **"ESI,"** means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise) of any electronically created or stored information, including but not limited to e-mail, instant messaging, videoconferencing, SMS, MMS, or other text messaging, and other electronic correspondence (whether active, archived, unsent, or in a sent or deleted-items folder), word-processing files, spreadsheets, databases, unorganized data, document metadata, presentation files, and sound recordings, regardless of how or where the information is stored, including if it is on a mobile device.

I.     **"Enforcement Director"** refers to the Assistant Director of the Office of Enforcement.

J.     **"Identify"** means to provide: (a) for natural persons, their name, title or position, present business affiliation, present business address, e-mail address, and telephone number, or if a present business affiliation or present business address is not known, the last known business address, home address, e-mail address, and telephone number; (b) for businesses or other organizations, the name, address, identities of officers, directors, or managers of the business or organization, and contact persons with e-mail addresses and telephone numbers, where applicable; and (c) for documents, the title, date, authors, recipients, Bates numbers, if applicable, type of document or some other means of identifying the document, and the present or last known location or custodian.

K.     **"Income-Stream Advance Transaction"** means any transaction or series of transactions involving the provision of an advance, buy-out, loan, or other payment in exchange for the sale, transfer, pledge, or other alienation of all or a portion of any income-stream payments.

L.     **"Income-Stream Payment"** means any payment made or scheduled to be made to a consumer under a schedule, including but not limited to payments made or scheduled to be made under a structured settlement, annuity, or pension plan.

M.     **"Pension Plan"** means any plan, fund or program that was established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan, or the method of distributing benefits from the plan.

N.     **"Person"** means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

**III.     Instructions**

A.   **Sharing of Information:** This CID relates to a nonpublic, law-enforcement investigation being conducted by the Bureau. The Bureau may make its files available to other civil and criminal federal, state, or local law-enforcement agencies under 12 C.F.R. §§ 1070.43(b)(1) and 1070.45(a)(5). Information you provide may be used in any civil or criminal proceeding by the Bureau or other agencies. As stated in 12 C.F.R. § 1080.14, information you provide in response to this CID is subject to the requirements and procedures relating to the disclosure of records and information set forth in 12 C.F.R. pt. 1070.

B.   **Meet and Confer:** As stated in 12 C.F.R. § 1080.6(c), you must contact Enforcement Attorney Alanna Carbis at (415)645-6615 as soon as possible to schedule a meeting (telephonic or in person) to discuss your response to the CID. The meeting must be held within **10** calendar days after you receive this CID or before the deadline for filing a petition to modify or set aside the CID, whichever is earlier.

C.   **Applicable Period for Responsive Materials:** Unless otherwise directed, the applicable period for the request is from **December 1, 2011** until the date of full and complete compliance with this CID.

D.   **Privilege Claims:** If any material responsive to this CID is withheld on the grounds of privilege, you must make the privilege claim no later than the date set for the production of the material. As stated in 12 C.F.R. § 1080.8(a), any such claim must include a schedule of the documents, information, or tangible things withheld that states, for each:

     1.   its type, specific subject matter, and date;

     2.   the names, addresses, positions, and organizations of all authors and direct or indirect recipients;

     3.   the specific grounds for claiming the privilege;

     4.   the request to which the privileged document, information, or thing  is responsive; and

     5.   its Bates number or range.

In addition, the person who submits the schedule and the attorney stating the grounds for the privilege must sign it. A person withholding material solely based on a claim of privilege must comply with the requirements of 12 C.F. R. § 1080.8 rather than file a petition for an order modifying or setting aside a demand under 12 C.F.R. § 1080.6(e). Please follow the enclosed Document Submission Standards for further instructions about producing redacted privileged documents.

E.   **Document Retention:** Until you are notified otherwise, you are required to retain all documents and other tangible things that you used or relied on in responding

to this CID. In addition, you must retain, and suspend any procedures that may result in the destruction of, documents, information, or tangible things that are in any way relevant to the investigation, as described in the CID's Notification of Purpose. You are required to prevent the destruction of relevant material irrespective of whether you believe such material is protected from future disclosure or discovery by privilege or otherwise. *See* 18 U.S.C. §§ 1505, 1519.

F.      **Modification Requests:** If you believe that the scope of the search or response required by this CID can be narrowed consistent with the Bureau's need for documents or information, you are encouraged to discuss such possible modifications, including modifications of the requirements of these instructions, with Enforcement Attorney Alanna Carbis at (415)645-6615. Modifications must be agreed to in writing by the Enforcement Director or a Deputy Enforcement Director. 12 C.F.R. § 1080.6(d).

G.      **Petition for Order Modifying or Setting Aside Demand:** Under 12 U.S.C. § 5562(f) and 12 C.F.R. § 1080.6(e), you may petition the Bureau for an order modifying or setting aside this CID. To file a petition, you must send it by e-mail to the Bureau's Executive Secretary at ExecSec@cfpb.gov, copying the Enforcement Director at Enforcement@cfpb.gov, within 20 calendar days of service of the CID or, if the return date is less than 20 calendar days after service, before the return date. The subject line of the e-mail must say "Petition to Modify or Set Aside Civil Investigative Demand." If a request for confidential treatment is filed, you must file a redacted public petition in addition to the unredacted petition. All requests for confidential treatment must be supported by a showing of good cause in light of applicable statutes, rules, Bureau orders, court orders, or other relevant authority.

H.      **Certification:** The person to whom the CID is directed or, if it is directed to an entity, any person having knowledge of the facts and circumstances relating to the production, must certify that the response to this CID is true and complete. This certification must be made on the form declaration included with this CID.

I.      **Scope of Search and Investigational Hearing:** This CID covers materials and information in your possession, custody, or control, including but not limited to documents in the possession, custody, or control of your attorneys, accountants, other agents or consultants, directors, officers, and employees.

J.      **Procedures Governing Hearing:** This CID is issued under section 1052 of the Consumer Financial Protection Act, 12 U.S.C. § 5562. The taking of oral testimony pursuant to this CID will be conducted in conformity with that section and 12 C.F.R. §§ 1080.6(a)(4), 1080.7, and 1080.9.

K.      **Document Production:** The Bureau encourages the electronic production of all material responsive to this CID; please follow the enclosed Document Submission Standards.

All productions sent by U.S. Postal Service should be addressed to:

Consumer Financial Protection Bureau
1700 G Street, NW
ATTN: Maria Ardike, SEFL, Office of Enforcement, Seat 4083-A
Washington, DC 20552

All productions sent by FedEx, UPS, or other courier should be addressed to:

Consumer Financial Protection Bureau
1625 Eye Street NW
ATTN: Maria Ardike, SEFL, Office of Enforcement, Seat 4083-A
Washington, DC 20006

Please provide your intended method of production and any tracking numbers by e-mail or telephone to Enforcement Attorney Alanna Carbis at Alanna.Carbis@cfpb.gov and (415) 645-6615.

L.    **Document Identification:** Documents that may be responsive to more than one request of this CID need not be submitted more than once. All documents responsive to this CID must be accompanied by an index that identifies: (i) the name of each custodian of each responsive document; (ii) the corresponding Bates number or range used to identify that person's documents; and (iii) the request or requests to which each document responds.

M.    **Sensitive Personally Identifiable Information:** If any material called for by these requests contains sensitive personally identifiable information, sensitive health information of any individual, or Suspicious Activities Reports, please contact Enforcement Attorney Alanna Carbis at (415)645-6615 before sending those materials to discuss ways to protect the information during production. You must encrypt electronic copies of such materials with encryption software acceptable to the Bureau. When submitting encrypted material, you must provide the encryption key, certificate, or passcode in a separate communication.

For purposes of this CID, sensitive personally identifiable information includes an individual's Social Security number alone or an individual's name, address, or phone number *in combination with* one or more of the following: date of birth, Social Security number, driver's-license number or other state-identification number, or a foreign country equivalent, passport number, financial-account number, credit-card number, or debit-card number. Sensitive health information includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

N.    **Information Identification:** Each request for a written report or interrogatory in this CID must be answered separately and fully in writing under oath. All information submitted must clearly and precisely identify the request or requests to which it is responsive.

**O.     Declaration Certifying Records of Regularly Conducted Business Activity:** Attached is a Declaration Certifying Records of Regularly Conducted Business Activity, which may limit the need to subpoena you to testify at future proceedings to establish the admissibility of documents produced in response to this CID. Please execute this Declaration and provide it with your response.

**P.     Production of Advertisements**: A request for advertisements means a request for the material in the form made available to consumers.

    a.  In the case of any audio or video advertisements, provide:
        i.  a complete recording and a written script;
        ii.  a photoboard; and
        iii.  a transcript.

    b.  In the case of an outward-facing website, provide:
        i.  a site map; and
        ii.  an image of each page titled after the name of the page as listed in the sitemap.

    c.  In the case of advertisements accessible on the internet via company websites, online message boards, forums, chat rooms, blogs, or social-networking sites, provide:
        i.  a written script or transcript of any audio or video content or clips;
        ii.  the date range that the material was accessible online;
        iii.  the electronic address, or URL, at which the material is or was accessible, including any "mirrored" sites;
        iv.  a description of all search-engine-optimization techniques used; and
        v.  the identity of the person responsible for the posting, including all aliases or screen names.

    d.  In the case of files containing advertisements archived or accessible online (e.g., at or on file-transfer protocol (FTP) sites, peer-to-peer networks, private or public cloud services, advertising or affiliate networks, or databases), provide:
        i.  the file, including the file name and date;
        ii.  the date the file initially was posted online;
        iii.  and all information necessary to locate, download, and view the file.

    e.  In the case of advertisements or promotional materials disseminated via e-mail, text message, or social media, provide:
        i.  the parent site of the mailing list that contains the listserv;
        ii.  the e-mail or mobile-marketing site;
        iii.  the social-media site;
        iv.  and any company usernames.

     f.   For social media sites (e.g., Facebook, LinkedIn, Twitter, Google+, Yelp, Pinterest), provide a complete export of all activity on the site, including shared photos, videos, images, wall posts, status updates, messages, and chat conversations.

Q.     All references to "**year**" or "**annual**" refer to the calendar year. Where information is requested "for each year," provide it separately for each year; where yearly data is not available, provide responsive information for the calendar year to date, unless otherwise instructed.

R.     **Duty to Estimate**: If you are unable to answer any interrogatory fully, supply such information as is available. Explain why such answer is incomplete, the efforts you made to obtain the information, and the source from which the complete answer may be obtained. If books and records that provide accurate answers are not available, enter best estimates and describe how the estimates were derived, including the sources or bases of such estimates. Estimated data should be followed by the notation "est." If there is no reasonable way to make an estimate, provide an explanation.



Consumer Financial
Protection Bureau

---

IN RE FUTURE INCOME PAYMENTS, LLC

2016-MISC-Future Income Payments, LLC-0001

---

## DECISION AND ORDER ON PETITION BY FUTURE INCOME PAYMENTS, LLC TO SET ASIDE OR MODIFY CIVIL INVESTIGATIVE DEMAND

Future Income Payments, LLC, the recipient of a civil investigative demand (CID) from the Consumer Financial Protection Bureau's Office of Enforcement, has petitioned for an order to set aside or modify the CID. For the reasons set forth below, the petition is denied.

### FACTUAL BACKGROUND

On November 23, 2016, the Bureau issued a CID to Future Income Payments (FIP) seeking information about its products, services, and operations. The CID's "Notification of Purpose" stated that the CID was issued "to determine whether financial-services companies or other persons have engaged or are engaging in unlawful acts and practices in connection with offering or providing extensions of credit or financial advisory services related to transactions involving pensions, annuities, settlements, or other future-income streams in violation of §§ 1031 and 1036 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536, or any other Federal consumer-financial law," and to determine whether "Bureau action to obtain legal or equitable relief would be in the public interest." The CID posed ten document requests, two requests for written reports, and nine interrogatories. The CID required FIP to produce the requested documents, responses to interrogatories, and written reports by December 14, 2016. Pursuant to the Bureau's rules, FIP was required to schedule a meeting (meet-and-confer) to occur within ten days of its receipt of the CID.

FIP's counsel engaged in a meet-and-confer call with Enforcement on December 8, 2016. FIP filed its Petition to Modify or Set Aside the CID (Petition) on December 13, 2016.

1

## LEGAL DETERMINATION

FIP offers three arguments as to why the CID should be set aside. None warrants setting aside the CID.

*First*, FIP argues that the CID is improper because the Bureau's structure is unconstitutional. FIP therefore asks the Bureau to withdraw the CID or to stay any further action pending additional proceedings in *PHH v. CPFB*, Case No. 15-1177 (D.C. Cir.). FIP's constitutional challenge is not properly raised in this administrative proceeding, however, because "government agencies may not entertain a constitutional challenge to authorizing statutes." *United Space Alliance, LLC v. Solis*, 824 F. Supp. 2d 68, 97 n.10 (D.D.C. 2011) (quotation omitted); *see Buckeye Indus., Inc. v. Sec'y of Labor, Occupational Safety & Health Review Comm'n*, 587 F.2d 231, 235 (5th Cir. 1979) ("[n]o administrative tribunal of the United States has the authority to declare unconstitutional the Act which it is called upon to administer"); *Robinson v. United States*, 718 F.2d 336, 338 (10th Cir. 1983) (same). Accordingly, FIP's constitutional arguments provide no basis for modifying or setting aside any provision of the CID.

*Second*, FIP argues that the CID exceeds the Bureau's jurisdiction. To make this claim, FIP guesses that the Bureau's CID is "based on a theory that the sale of a future income stream in exchange for a lump-sum payment is a loan, and, as such, is a consumer financial product or service under 12 U.S.C. § 5481(15)(A)(i)." Pet. at 5. FIP's argument fails. The CFPA authorizes the Bureau to issue CIDs to "any person" who may have information "relevant to a violation." 12 U.S.C. § 5562(c)(1). Because this authority extends to *any* person – not only covered persons or service providers – who may possess relevant information, the company's argument does not relate to the scope of the Bureau's investigative authority. Instead, the company's argument offers a premature substantive defense against claims the Bureau has not asserted and may not assert. As the Bureau has previously explained, an entity's fact-based arguments about whether it is subject to or has complied with substantive provisions of the CFPA are not defenses to the enforcement of a CID. *See In re Zero Parallel, LLC*, 2016-MISC-Zero Parallel-0001, at 2-3 (July 14, 2016);[1] *In re J.G. Wentworth, LLC*, 2015-MISC-J.G. Wentworth, LLC-0001, at 2 (Feb. 11, 2016);[2] *In re Next Generation Debt Settlement, Inc.*, 2012-MISC-Next Generation Debt Settlement-0001, at 2 (Oct. 5, 2012).[3] Courts have agreed with federal agencies that have reached the same conclusion in similar circumstances. *See SEC v. Savage*, 513 F.2d 188, 189 (7th Cir. 1975) (SEC not required to establish that company's commodities future contracts were "securities" within the meaning of the Securities Act before subpoena would be enforced). The Supreme Court has "consistently reaffirmed" the principle that "courts should not refuse to enforce an

---

[1] *Available at* https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/ Decision_and_Order_on_Petition_by_Zero_Parallel_LLC_to_Modify_or_Set_ A...pdf.
[2] *Available at* http://files.consumerfinance.gov/f/201602_cfpb_decision-and-order-n-petition-by-jg-wentworth-llc-to-modify-or-set-aside-civil-investigative-demand.pdf.
[3] *Available at* http://files.consumerfinance.gov/f/201210_cfpb_2012-MISC-Next-Generation-Debt-Settlement-0001-Order.pdf.

2

administrative subpoena when confronted by a fact-based claim regarding coverage or compliance with the law." *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (citing, *inter alia, United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950)). The Bureau's inquiry is thus within its authority. *See Morton Salt Co.*, 338 U.S. at 652-53 (government investigation is appropriate if "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant"). Moreover, at least one Bureau investigation to date has revealed that a company that purported merely to purchase assets from consumers was actually engaged in lending to those consumers. *See* Complaint, *CFPB v. Pension Funding, LLC*, No. 8:15-cv-1329 (C.D. Cal. Aug. 20, 2015).[4] In another case, the Bureau has alleged that a structured settlement factoring company violated the CFPA in connection with a third party's provision of financial advisory services and its own advances to consumers. *See* Complaint, *CFPB v. Access Funding, LLC*, No. 1:16-cv-03759 (D. Md. Nov. 21, 2016).[5]

*Third*, FIP argues that the CID is improper because it does not seek information relevant to a legitimate purpose. To make this argument, FIP relies largely on its claim that it is not extending credit to consumers. FIP's argument assumes that the Bureau is investigating FIP exclusively on the theory that FIP itself is extending credit or providing financial advisory services. As explained above, such fact-based claims about the application of the CFPA are not a defense to the enforcement of a CID. FIP then contends that the Bureau's CID is improper because it requests information relevant to "income-stream-advance transactions" as opposed to financial advisory services. The crucial issue with respect to relevance is whether the material sought by the agency's compulsory process is reasonably relevant to the purpose of the investigation. *See Morton Salt Co.*, 338 U.S. at 652-53. This "test is satisfied if the documents sought are not plainly irrelevant to the investigative purpose." *FTC v. Carter*, 636 F.2d 781, 788 (D.C. Cir. 1980) (quotation omitted). Here, a stated purpose of the investigation is to determine whether certain persons have engaged in "unlawful acts and practices in connection with offering or providing extensions of credit or financial advisory services related to transactions involving pensions, annuities, settlements, or other future-income streams." The CID's requests for information concerning "income-stream-advance transactions" are thus plainly relevant to the purpose of the investigation.

FIP further suggests that because the Bureau had not taken any official action with respect to pension advances as of June 2014, the CID is somehow improper. Besides relying on the faulty factual premise that the Bureau has not previously addressed pension advance products, *see supra* note 4, FIP's argument fails because it assumes, incorrectly, that the Bureau may not investigate conduct unless it has previously formulated and announced every legal interpretation that might be relevant to that investigation. Whatever fair notice arguments that FIP (or any other person) might have are not relevant at this stage; such questions should wait until any enforcement action is brought. *See United States v. Constr. Prod. Research, Inc.*, 73

---

[4] *Available at* http://files.consumerfinance.gov/f/201508_cfpb_complaint-pension-funding-llc-pension-income.pdf.

[5] *Available at* http://files.consumerfinance.gov/f/documents/201611_cfpb_Access_Funding_Complaint_filed.pdf.

F.3d 464, 470 (2d Cir. 1996). Finally, FIP asks for the CID to be limited to what FIP terms the "threshold issue" of whether FIP is a covered person, but that is not a threshold issue at all. Indeed, the stated purpose of the investigation is to determine whether certain persons ~~have~~ engaged in "unlawful acts and practices in connection with offering or providing extensions of credit or financial advisory services related to transactions involving pensions, annuities, settlements, or other future-income streams," and is not limited only to violations in connection with consumer financial products or services that FIP offers or provides.

In the alternative, FIP asks the Bureau to modify the request in four ways.

*First*, FIP claims the CID should be limited to data from December 1, 2013 until the date of full and complete compliance with the CID in light of the three-year statute of limitations contained in 12 U.S.C. § 5564(g). But FIP ignores that the limitations period it cites only begins running "after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1). So even if the Bureau could not seek relevant information merely because it is not within a potentially applicable statute of limitations (which is not the case),[6] there is no reason to believe that the Bureau discovered any violations committed by FIP on or before December 1, 2010, which would have caused the statute to start running.

*Second*, FIP claims the geographic scope is overbroad because FIP believes that the CID stems from a joint investigation with the Los Angeles City Attorney. It then speculates that the investigation is focused on customers located in Los Angeles or California. Because the Bureau's investigation is not limited to Los Angeles or California, FIP's request to restrict the CID geographically is without any possible basis.

*Third*, FIP claims that the CID is overly broad because it defines "Company," "you," and "your" to include, among others, "consultants, attorneys, accountants, independent contractors, and other persons working for or on behalf of the foregoing." In particular, FIP claims that it will be unable to satisfy the request for "[a]ll of the Company's training manuals and materials" because, as applied to such third parties, this request seeks "documents [that] belong to those persons and entities, not to FIP." FIP misreads the request. The CID request does not seek all training manuals on any subject maintained by FIP and anyone who works on behalf of FIP (whether those manuals have anything to do with FIP or not); rather the document request seeks "training manuals and materials ... related to advertising income-stream advance transactions, purchasing or acquiring the rights to income-stream payments, collecting income-stream payments, and transferring or selling the rights to income-stream payments," Pet., Ex. A, Request for Documents No. 8, but only to the extent that those materials are in FIP's "possession, custody, or control," Pet., Ex. A, Instructions III.I. To be sure, materials within FIP's possession, custody, or control can include materials that are within the possession, custody, or control of FIP's "attorneys, accountants, other

---

[6] *See, e.g.*, *In re PHH Corporation*, 2012-MISC-PHH Corp-0001, at 7-8 (Sept. 20, 2012), *available at* http://files.consumerfinance.gov/f/201209_cfpb_setaside_phhcorp_0001.pdf.

4

agents or consultants, directors, officers, and employees." Pet., Ex. A, Instructions III.I. The CID issued to FIP, however, does not seek materials from FIP that are within the possession, custody, or control of FIP's attorneys, accountants, or other agents but that are not also within FIP's possession, custody, or control. *Cf.* 12 U.S.C. § 5562(c)(1).

*Fourth*, FIP claims that two requests concerning FIP's financial assets, revenues, and profits should be struck as irrelevant. However, it is well settled that company financial information can be relevant to an agency's investigation into potential violations of consumer protection laws. *See, e.g., FTC v. Invention Submission Corp.,* 965 F.2d 1086, 1089-90 (D.C. Cir. 1992) (upholding enforcement of FTC CIDs seeking financial records of company in an investigation of potential unfair and deceptive practices); *cf. also In re McVane,* 44 F.3d 1127, 1139-40 (Jan. 12, 1995) (upholding enforcement of FDIC subpoena concerning financial records of directors of failed bank).

Finally, FIP requests confidential treatment of the CID, the Petition, and this Order. The Bureau's regulations governing investigations provide, in 12 C.F.R. § 1080.6(g), that a petition to modify or set aside a CID and the Director's Order in response thereto are "part of the public records of the Bureau unless the Bureau determines otherwise for good cause shown." A petitioner bears the burden of showing good cause for non-public treatment of its petition. This standard mirrors that of the Federal Trade Commission and is consistent with the "general policy favoring disclosure of administrative agency proceedings." *FCC v. Schreiber,* 381 U.S. 279, 293 (1965) (affirming agency authority to promulgate rule generally requiring public disclosure of investigative information). In evaluating whether a petitioner has shown "good cause" to prevent public disclosure of petitions and responsive orders under 12 C.F.R. § 1080.6(g), the Bureau generally looks to the standards for withholding material from public disclosure established by Freedom of Information Act (FOIA) amendments to the Administrative Procedure Act.[7] Accordingly, the Bureau will publicly disclose a petition to modify or set aside a CID unless either the petitioner has made a factual showing that information in the petition falls within one of the FOIA exemptions or the Bureau determines that there exists other good cause to withhold all or a portion of the petition from public disclosure and the withheld information is not otherwise required by law to be made public.

Here, FIP has made no effort to identify any material that would be protected by FOIA. Rather, FIP contends that it would be inappropriate to make public the fact that it has received a CID while the constitutionality of the Bureau's structure remains a subject of litigation. But FIP offers no convincing explanation why the existence of the ongoing constitutional litigation reduces the importance of the transparency values served by the presumption, announced in the Bureau's regulations, that petitions to modify or set aside CIDs and orders addressing such petitions be "part of the public records of the Bureau." 12 C.F.R. § 1080.6(g). I therefore find that FIP has not shown good cause for non-public treatment of the CID, its Petition, and this Order.

---

[7] *See In re Zero Parallel, LLC,* 2016-MISC-Zero Parallel-0001, at 2-3 (July 1, 2016), *available at* https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/Zero_ Parallel_confidentiality_decision_6-30-16_FINAL_with_signature.pdf.

5

## CONCLUSION

For the foregoing reasons, FIP's petition to modify or set aside the CID is denied. FIP is directed to produce all responsive documents, items, and information within its possession, custody, or control that are covered by the CID, within 10 calendar days of this Decision and Order. The company is welcome to engage in discussions with Staff about any further suggestions for modifying the CID, which may be adopted by the Assistant Director for Enforcement or his Deputy as appropriate.

*Richard Cordray*
_____
Richard Cordray, Director

January 5, 2017

6

FILED

2017 FEB 21 AM 10: 50

ALANNA B. CARBIS (CA Bar No. 264066)
alanna.carbis@cfpb.gov
LEANNE HARTMANN (CA Bar No. 264787)
leanne.hartmann@cfpb.gov
1700 G Street, NW
Washington, DC 20552
Telephone: (415) 645-6615
Fax: (415) 844-9788

Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, Petitioner, v. FUTURE INCOME PAYMENTS, LLC, Respondent. | Case No. SACV 17-00303 JLS (SSx)<br>**PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND** |

BY FAX

ORIGINAL

1      1.      On November 23, 2016, the Consumer Financial Protection Bureau (Bureau)

2   issued a civil investigative demand (CID) to Future Income Payments, LLC (FIP). The

3   CID was issued as part of an investigation to determine whether "persons have engaged

4   or are engaging in unlawful acts and practices in connection with offering or providing

5   extensions of credit or financial advisory services related to transactions involving

6   pensions…or other future-income streams" in violation of the Consumer Financial

7   Protection Act of 2010 (CFPA) or any other "Federal consumer-financial law." The CID

8   required the production of documents, written reports, and responses to interrogatories.

9      2.      After FIP unsuccessfully petitioned to set aside the CID, it filed a motion for

10  a temporary restraining order and preliminary injunction in the U.S. District Court for the

11  District of Columbia asking the court to prohibit the Bureau from taking any action

12  adverse to FIP. It also filed a motion to proceed pseudonymously.

13     3.      On February 17, 2017, the court denied FIP's motions for a temporary

14  restraining order and preliminary injunction.  The court enjoined the Bureau from

15  publicly disclosing FIP's identity for a period of two weeks. The court did not otherwise

16  enjoin or restrain the Bureau's investigation. FIP has filed a notice of appeal from that

17  order.

18     4.      By this Petition, the Bureau seeks an order directing FIP to show cause why

19  it should not be required to comply with the CID. In support thereof, the Bureau submits

20  the accompanying Memorandum of Law, Declaration of Alanna B. Carbis, and

21  supporting documents.

22                                    **Jurisdiction and Venue**

23     5.      This Court has subject-matter jurisdiction under § 1052(e)(1) of the CFPA.

24  12 U.S.C. § 5562(e)(1).

25     6.      Venue is proper because FIP resides and transacts business in this district. 12

26  U.S.C. § 5562(e)(1).

27

28

<div align="center">1</div>

PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND

**The Parties**

7. The Bureau is an independent agency of the United States. 12 U.S.C. § 5491(a).

8. FIP is located in and transacts business in this district and received the CID issued November 23, 2016, related to an investigation by the Bureau.

**Service of the CID and FIP's Failure to Comply**

9. To determine whether "Federal consumer financial law" has been violated, CFPA § 1052(c) empowers the Bureau to issue a CID whenever it has reason to believe that "any person . . . may have any information[] relevant to a violation." 12 U.S.C. § 5562(c)(1). A CID issued by the Bureau may, among other things, require the recipient to produce documents, respond to interrogatories, and provide written reports. *Id.*

10. On November 23, 2016, the Bureau served the CID on FIP. The CID required FIP to produce documents and written reports and respond to interrogatories by December 14, 2016.

11. As required by CFPA § 1052(c)(2), the CID contained a Notification of Purpose apprising FIP of the nature of the conduct under investigation and applicable provisions of law.

12. After receiving the CID, FIP's counsel requested an extension of the date by which it would be required to file with the Bureau a petition to modify or set aside the CID (Petition) from December 13, 2016, to January 31, 2017, to permit it additional time to consider whether to do so. The Bureau denied the request for an extension.

13. In a subsequent meet-and-confer meeting regarding the CID, FIP's counsel asked the Bureau to withdraw the CID and instead engage in informal discovery with FIP. The Bureau rejected that proposal.

14. FIP filed its Petition on December 13, 2016.

15. The Bureau denied FIP's Petition on Thursday, January 5, 2017 and notified FIP of the denial on January 6, 2017. The Bureau's Order directed FIP to produce "all

2

1   responsive documents, items, and information within its possession, custody, or control
2   that are covered by the CID, within 10 calendar days" of the date of the Order. The Order
3   also invited FIP to engage in further discussions with the Bureau's enforcement staff
4   about modifying the CID.
5        16.    On Monday, January 9, 2017, FIP filed a motion for a temporary restraining
6   order and preliminary injunction in the U.S. District Court for the District of Columbia
7   asking the court to prohibit the Bureau from taking any action adverse to FIP. FIP also
8   filed a motion to proceed pseudonymously.
9        17.    On February 17, 2017, the court entered an order denying FIP's motions for
10  a preliminary injunction and temporary restraining order. The court enjoined the Bureau
11  from publicly disclosing FIP's identify for a period of two weeks. The court did not
12  otherwise enjoin or restrain the Bureau's investigation. FIP has filed a notice of appeal
13  from that order.
14       18.    FIP has failed to comply with the CID. The Bureau requests the relief set
15  forth below.
16
17  WHEREFORE, the Bureau requests:
18  1.  an order directing FIP to show cause why it should not be required to comply with
19      the CID;
20  2.  after FIP's response to the order to show cause, an order directing FIP to comply
21      with the CID within ten days of the order or at a later date as may be established by
22      the Bureau or the Court; and
23  3.  such other relief as this Court deems just and proper.
24
25
26
27
28

3

PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND

1    Dated: February 21, 2017                    Respectfully submitted,

2

3                                               _____

4                                               Alanna B. Carbis (CA Bar. No. 264066)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    4

(SSx),APPEAL,CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division – Santa Ana)
### CIVIL DOCKET FOR CASE #: 8:17–cv–00303–JLS–SS

Consumer Financial Protection Bureau v. Future Income
Payments, LLC
Assigned to: Judge Josephine L. Staton
Referred to: Magistrate Judge Suzanne H. Segal
Cause: 28:1331 Fed. Question

Date Filed: 02/21/2017
Date Terminated: 05/17/2017
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Petitioner**

**Consumer Financial Protection Bureau**     represented by

**Alanna Gayle Buchanan Carbis**
Consumer Financial Protection Bureau
301 Howard Street 12th Floor
San Francisco, CA 94105
415–645–6615
Fax: 415–844–9788
Email: alanna.carbis@cfpb.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kent A Kawakami**
AUSA – Office of US Attorney
Civil Division
300 North Los Angeles Street Room 7516
Los Angeles, CA 90012
213–894–4858
Fax: 213–894–7819
Email: kent.kawakami@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher J Deal**
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
202–435–9582
Fax: 202–435–7024
Email: christopher.deal@cfpb.gov
*TERMINATED: 05/18/2017*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristin L Bateman**
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
202–435–7821
Fax: 202–435–7024
Email: kristin.bateman@cfpb.gov
*ATTORNEY TO BE NOTICED*

**Leanne E Hartmann**
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
415–645–6615
Fax: 415–844–9788
Email: leanne.hartmann@cfpb.gov
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

| | | |
|---|---|---|
| **Future Income Payments, LLC** | represented by | **Isabelle Louise Ord** |

**Isabelle Louise Ord**
DLA Piper LLP
550 South Hope Street Suite 2300
Los Angeles, CA 90071
415–836–2536
Fax: 415–659–7336
Email: isabelle.ord@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jesse Steinbach**
DLA Piper LLP
2000 Avenue of the Stars Suite 400 North
Tower
Los Angeles, CA 90067
310–595–3000
Fax: 310–595–3300
Email: jesse.steinbach@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Julia Marie Brighton**
DLA Piper LLP
555 Mission Street Suite 2400
San Francisco, CA 94105–2933
415–836–2500
Fax: 415–836–2501
Email: julia.brighton@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Wayne Jones**
Womble Bond Dickinson (US) LLP
555 Fayetteville Street Suite 1100
Raleigh, NC 27601
919–755–8173
Fax: 919–755–6771
Email: Chris.Jones@wbd–us.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel B Hartzell**
Womble Carlyle Sandridge and Rice LLP
555 Fayetteville Street Suite 1100
Raleigh, NC 27601
919–755–2112
Fax: 919–755–6772
Email: shartzell@wcsr.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/21/2017 | 1 | PETITION TO ENFORCE CIVIL Investigative Demand filed against Future Income Payments, LLC.(Filing fee FEE WAIVED.), filed by petitioner Consumer Financial Protection Bureau. (Attachments: # 1 Proposed Order to Show Cause, # 2 Proposed Order Compelling Compliance with Civil Investigative Demand, # 3 CV–71) (ghap) (Entered: 02/21/2017) |

| 02/21/2017 | 2 | APPLICATION for Leave to File Case Under Seal, filed by petitioner Consumer Financial Protection Bureau. (Attachments: # 1 Proposed Order Granting Leave to Filed Case Under Seal) (ghap) (Entered: 02/21/2017) |
|---|---|---|
| 02/21/2017 | 3 | MEMORANDUM in Support of Re: Petition (case opening), 1 filed by Petitioner Consumer Financial Protection Bureau. (ghap) (Entered: 02/21/2017) |
| 02/21/2017 | 4 | DECLARATION of Leanne E. Hartmann in Support of re APPLICATION to Seal Case 2 filed by Petitioner Consumer Financial Protection Bureau. (ghap) (Entered: 02/21/2017) |
| 02/21/2017 | 5 | DECLARATION of Alanna B. Carbis in Support of re Petition (case opening), 1 filed by Petitioner Consumer Financial Protection Bureau. (ghap) (Entered: 02/21/2017) |
| 02/21/2017 | 6 | NOTICE OF ASSIGNMENT to District Judge Josephine L. Staton and Magistrate Judge Suzanne H. Segal. (ghap) (Entered: 02/21/2017) |
| 02/21/2017 | 7 | NOTICE TO PARTIES OF COURT–DIRECTED ADR PROGRAM filed. (ghap) (Entered: 02/21/2017) |
| 02/22/2017 | 8 | ORDER by Judge Josephine L. Staton granting 2 APPLICATION to Seal Case. (dro) (Entered: 02/22/2017) |
| 02/28/2017 | 9 | (SEALED DOCUMENT) ORDER TO SHOW CAUSE by Judge Josephine L. Staton. IT IS HEREBY ORDERED that on March 24, 2017 at 2:30 P.M., or as soon thereafter as the parties can be heard, the Respondent shall appear before the Honorable Josephine L. Staton, United States District Judge, in Courtroom 10A, located at 411 W. Fourth Street, Santa Ana, CA, 92701 to show cause, if there be any, why an Order Compelling Compliance with CID should not be granted in accordance with the Petition filed by the Bureau. IT IS FURTHER ORDERED that Petitioner serve Respondent with a copy of this Order within three days. IT IS FURTHER ORDERED that Respondent file and serve any papers in opposition to the Bureau's Petition on or before March 10, 2017, and that the Bureau file and serve any reply papers on or before March 17, 2017. (see document for details). (dro) (Entered: 02/28/2017) |
| 03/03/2017 | 10 | SEALED DOCUMENT – STIPULATION to Extend Sealing of Case, filed by Respondent Future Income Payments, LLC regarding (Attachments: # 1 Proposed Order)(dro) (Entered: 03/06/2017) |
| 03/03/2017 | 11 | NOTICE of Appearance of Counsel on Behalf of Future Income Payments, LLC filed by Respondent Future Income Payments, LLC. (dro) (Entered: 03/06/2017) |
| 03/03/2017 | 12 | NOTICE of Appearance of Counsel on Behalf of Future Income Payments, LLC filed by Respondent Future Income Payments, LLC. (dro) (Entered: 03/06/2017) |
| 03/03/2017 | 13 | NOTICE of Interested Parties filed by Respondent Future Income Payments, LLC, (dro) (Entered: 03/06/2017) |
| 03/03/2017 | 14 | CERTIFICATION and Notice of Interested Parties filed by Respondent Future Income Payments, LLC, (dro) (Entered: 03/06/2017) |
| 03/03/2017 | 15 | CERTIFICATION and Notice of Interested Parties filed by Respondent Future Income Payments, LLC, (dro) (Entered: 03/06/2017) |
| 03/06/2017 | 16 | ORDER by Judge Josephine L. Staton Granting Stipulation to Extend Sealing of Case 10 . (dro) (Entered: 03/06/2017) |
| 03/07/2017 | 17 | INITIAL STANDING ORDER FOR CASES ASSIGNED TO JUDGE JOSEPHINE L. STATON (tg) (Entered: 03/07/2017) |
| 03/07/2017 | 18 | Joint STIPULATION for Extension of Time to File STIPULATION TO EXTEND BRIEFING SCHEDULE ON ORDER TO SHOW CAUSE filed by Respondent Future Income Payments, LLC. (Attachments: # 1 Proposed Order)(Attorney Isabelle Louise Ord added to party Future Income Payments, LLC(pty:res))(Ord, Isabelle) (Entered: 03/07/2017) |
| 03/07/2017 | 19 | APPLICATION of Non–Resident Attorney Christopher W. Jones to Appear Pro Hac Vice on behalf of Respondent Future Income Payments, LLC (Pro Hac Vice Fee – Fee Paid, Receipt No. 0973–19477793) filed by Respondent Future Income Payments, LLC. (A ttachments: # 1 Proposed Order) (Ord, Isabelle) (Entered: 03/07/2017) |

| | | |
|---|---|---|
| 03/08/2017 | 20 | DECLARATION of ISABELLE ORD re Stipulation for Extension of Time to File, 18 filed by Respondent Future Income Payments, LLC. (Ord, Isabelle) (Entered: 03/08/2017) |
| 03/09/2017 | 21 | ORDER by Judge Josephine L. Staton granting Stipulation to Extend Briefing Schedule. The parties having filed a joint Stipulation to Extend Briefing Schedule 18 , the Court having considered the Stipulation, and good cause having been shown, the Court being fully advised in this matter, and there being no just cause for delay: IT IS HEREBY ORDERED that Respondent shall file and serve any papers in opposition to the Petition to Enforce Civil Investigative Demand on or before March 20, 2017, Petitioner shall file and serve any reply papers on or before March 31, 2017, and Respondent shall appear before the Honorable Josephine L. Staton, United States District Judge, on April 14, 2017 at 2:30 p.m., or as soon thereafter as the parties can be heard, to show cause, if there be any, why an Order Compelling Compliance with the Civil Investigative Demand should not be granted in accordance with the Petition. (dro) (Entered: 03/09/2017) |
| 03/14/2017 | 22 | APPLICATION of Non–Resident Attorney Samuel B. Hartzell to Appear Pro Hac Vice on behalf of Respondent Future Income Payments, LLC (Pro Hac Vice Fee – Fee Paid, Receipt No. 0973–19511545) filed by Respondent Future Income Payments, LLC. (Att achments: # 1 Proposed Order) (Steinbach, Jesse) (Entered: 03/14/2017) |
| 03/15/2017 | 23 | ORDER by Judge Josephine L. Staton: granting 22 Non–Resident Attorney HARTZELL, Samuel B. APPLICATION to Appear Pro Hac Vice on behalf of Respondent Future Income Payments, LLC, designating STEINBACH, Jesse as local counsel. (dv) (Entered: 03/15/2017) |
| 03/15/2017 | 24 | ORDER by Judge Josephine L. Staton: granting 19 Non–Resident Attorney JONES, Christopher W. APPLICATION to Appear Pro Hac Vice on behalf of Respondent Future Income Payments, LLC, designating ORD, Isabelle L. and STEINBACH, Jesse as local counsel. (dv) (Entered: 03/15/2017) |
| 03/15/2017 | 25 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non–Resident Attorney Samuel B. Hartzell to Appear Pro Hac Vice on behalf of Respondent Future Income Payments, LLC (Pro Hac Vice Fee – Fee Paid, Receipt No. 0973–19511545) 22 . The following error(s) was/were found: Local Rule 83–2.1.3.3(a) Application not complete: state and/or federal courts to which the applicant has been admitted are not listed. Other error(s) with document(s): NY not listed.. (lt) (Entered: 03/15/2017) |
| 03/20/2017 | 26 | OPPOSITION *TO PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND OF RESPONDENT FUTURE INCOME PAYMENTS, LLC* filed by Respondent Future Income Payments, LLC. (Attachments: # 1 Proposed Order, # 2 Declaration REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF SAMUEL B. HARTZELL, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D)(Ord, Isabelle) (Entered: 03/20/2017) |
| 03/24/2017 | 27 | NOTICE OF MOTION AND MOTION to Stay Case pending ACTIONS IN OTHER COURTS filed by Respondent Future Income Payments, LLC. Motion set for hearing on 5/12/2017 at 02:30 PM before Judge Josephine L. Staton. (Attachments: # 1 Proposed Order, # 2 Declaration REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF SAMUEL B. HARTZELL IN SUPPORT OF MOTION FOR STAY OF ACTION BY RESPONDENT FUTURE INCOME PAYMENTS, LLC, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q, # 20 Exhibit R, # 21 Exhibit S) (Ord, Isabelle) (Entered: 03/24/2017) |
| 03/31/2017 | 28 | REPLY IN SUPPORT OF PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND filed by Petitioner Consumer Financial Protection Bureau. (Carbis, Alanna) (Entered: 03/31/2017) |
| 03/31/2017 | 29 | DECLARATION of Alanna B. Carbis re Reply (Motion related) 28 *in Support of Petition to Enforce Civil Investigative Demand* filed by Petitioner Consumer Financial Protection Bureau. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12)(Carbis, Alanna) (Entered: 03/31/2017) |

| 04/03/2017 | 30 | EX PARTE APPLICATION for Hearing EX PARTE APPLICATION FOR ORDER CONSOLIDATING HEARING ON ORDER TO SHOW CAUSE WITH HEARING ON MOTION FOR STAY OF ACTION, re Order,,,, Set/Reset Hearing,,, 21 , filed by Respondent Future Income Payments, LLC. (Attachments: # 1 Memorandum, # 2 Declaration of Isabelle Ord, # 3 Proposed Order) (Ord, Isabelle) (Entered: 04/03/2017) |
|---|---|---|
| 04/04/2017 | 31 | STIPULATION for Extension of Time to File RESPONSE TO EX PARTE APPLICATION FOR ORDER CONSOLIDATING HEARING ON ORDER TO SHOW CAUSE WITH HEARING ON MOTION FOR STAY OF ACTION filed by Petitioner Consumer Financial Protection Bureau. (Attachments: # 1 Proposed Order Granting Extension, # 2 Declaration of Alanna B. Carbis)(Carbis, Alanna) (Entered: 04/04/2017) |
| 04/04/2017 | 32 | ORDER GRANTING STIPULATION TO EXTEND DEADLINE TO RESPOND TO EX PARTE APPLICATION FOR ORDER CONSOLIDATING HEARING ON ORDER TO SHOW CAUSE WITH HEARING ON MOTION FOR STAY OF ACTION 31 . See Order for details. (tg) (Entered: 04/04/2017) |
| 04/05/2017 | 33 | OPPOSITION in opposition to re: EX PARTE APPLICATION for Hearing EX PARTE APPLICATION FOR ORDER CONSOLIDATING HEARING ON ORDER TO SHOW CAUSE WITH HEARING ON MOTION FOR STAY OF ACTION, re Order,,,, Set/Reset Hearing,,, 21 , 30 filed by Petitioner Consumer Financial Protection Bureau. (Attachments: # 1 Declaration of Leanne E. Hartmann, # 2 Proposed Order denying ex parte application)(Hartmann, Leanne) (Entered: 04/05/2017) |
| 04/10/2017 | 34 | MINUTES (IN CHAMBERS) ORDER by Judge Josephine L. Staton denying 30 EX PARTE APPLICATION. (see document for details). (dro) (Entered: 04/10/2017) |
| 04/10/2017 | 35 | Notice of Appearance or Withdrawal of Counsel: for attorney Kristin L Bateman counsel for Petitioner Consumer Financial Protection Bureau. Adding Kristin L Bateman as counsel of record for Consumer Financial Protection Bureau for the reason indicated in the G–123 Notice. Filed by Petitioner Consumer Financial Protection Bureau. (Attorney Kristin L Bateman added to party Consumer Financial Protection Bureau(pty:pet))(Bateman, Kristin) (Entered: 04/10/2017) |
| 04/14/2017 | 36 | MINUTES OF Order to Show Cause Hearing held before Judge Josephine L. Staton: Matter called. Arguments heard. The matter is taken under submission. A written order to follow. Court Reporter: Deborah Parker. (mt) (Entered: 04/14/2017) |
| 04/17/2017 | 37 | TRANSCRIPT ORDER as to defendant Future Income Payments, LLC for Court Reporter. Court will contact Travis Jensen at travis.jensen@dlapiper.com with any questions regarding this order. Transcript preparation will not begin until payment has been satisfied with the court reporter. (Ord, Isabelle) (Entered: 04/17/2017) |
| 04/20/2017 | 38 | TRANSCRIPT ORDER as to Petitioner Consumer Financial Protection Bureau for Court Reporter. Transcript preparation will not begin until payment has been satisfied with the court reporter. (Carbis, Alanna) (Entered: 04/20/2017) |
| 04/21/2017 | 39 | OPPOSITION in opposition to re: NOTICE OF MOTION AND MOTION to Stay Case pending ACTIONS IN OTHER COURTS 27 filed by Petitioner Consumer Financial Protection Bureau. (Attachments: # 1 Declaration of Leanne E. Hartmann in Support of Opposition to Respondent's Motion to Stay Action, # 2 Exhibit 1 to Hartmann Declaration, # 3 Exhibit 2 to Hartmann Declaration, # 4 Exhibit 3 to Hartmann Declaration, # 5 Exhibit 4 to Hartmann Declaration, # 6 Proposed Order Denying Respondent's Motion to Stay)(Hartmann, Leanne) (Entered: 04/21/2017) |
| 04/26/2017 | 40 | APPLICATION of Non–Resident Attorney Christopher J. Deal to Appear Pro Hac Vice on behalf of Petitioner Consumer Financial Protection Bureau (Pro Hac Vice Fee – Not Required for US Government Attorney) filed by plaintiff Consumer Financial Protection Bureau. (Attachments: # 1 Proposed Order) (Attorney Kent A Kawakami added to party Consumer Financial Protection Bureau(pty:pet)) (Kawakami, Kent) (Entered: 04/26/2017) |
| 04/27/2017 | 41 | ORDER by Judge Josephine L. Staton: granting 40 Non–Resident Attorney Christopher J. Deal APPLICATION to Appear Pro Hac Vice on behalf of plaintiff, Consumer Financial Protection Bureau, designating Kent A. Kawakami as local counsel. (dro) (Entered: 04/27/2017) |

| 04/28/2017 | 42 | TRANSCRIPT for proceedings held on 04/14/2017, 2:45 p.m. Court Reporter: Deborah D. Parker, CSR 10342, phone number transcripts@ddparker.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through DEBORAHDPARKER.COM or PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 5/19/2017. Redacted Transcript Deadline set for 5/30/2017. Release of Transcript Restriction set for 7/27/2017. (Parker, Deborah) (Main Document 42 replaced on 6/20/2017, see Notice of Clerical Error, Docket 57 .) (rrp). (Entered: 04/28/2017) |
|---|---|---|
| 04/28/2017 | 43 | NOTICE OF FILING TRANSCRIPT filed for proceedings 04/14/2017, 2:45 p.m. re Transcript 42 THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (Parker, Deborah) TEXT ONLY ENTRY (Entered: 04/28/2017) |
| 04/28/2017 | 44 | REPLY in Support NOTICE OF MOTION AND MOTION to Stay Case pending ACTIONS IN OTHER COURTS 27 *Reply of Future Income Payments, LLC in Support of Motion for Stay of Action* filed by Respondent Future Income Payments, LLC. (Ord, Isabelle) (Entered: 04/28/2017) |
| 04/28/2017 | 45 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Stay Case pending ACTIONS IN OTHER COURTS 27 *Request for Judicial Notice and Declaration of Samuel B. Hartzell in Further Support of Motion for Stay* filed by Respondent Future Income Payments, LLC. (Ord, Isabelle) (Entered: 04/28/2017) |
| 05/10/2017 | 46 | MINUTE IN CHAMBERS ORDER TAKING RESPONDENT'S MOTION TO STAY CASE UNDER SUBMISSION by Judge Josephine L. Staton: Before the Court is a Motion to Stay Case filed by Respondent Future Income Payments, LLC. (Mot., Doc. 27.) The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7–15. Accordingly, the hearing set for May 12, 2017, at 2:30 p.m., is VACATED, and the Court takes the matter UNDER SUBMISSION 27 . (dv) (Entered: 05/10/2017) |
| 05/17/2017 | 47 | ORDER (1) GRANTING THE CONSUMER FINANCIAL PROTECTION BUREAU'S PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND AND (2) DENYING FUTURE INCOME PAYMENTS MOTION TO STAY CASE (Docs. 1 , 27 ) by Judge Josephine L. Staton. The CFPB's Petition to Enforce the Civil Investigative Demand is GRANTED, and Future Income Payments' Motion to Stay Case is DENIED. Future Income Payments is hereby ORDERED to comply with the CID within fifteen days of this Order or at a later date as may be established by the CFPB or the Court. (see document for details). (Made JS–6. Case Terminated.) (dro) (Main Document 47 replaced on 6/19/2017) (es). (Entered: 05/17/2017) |
| 05/18/2017 | 48 | Notice of Appearance or Withdrawal of Counsel: for attorney Christopher J Deal counsel for Petitioner Consumer Financial Protection Bureau. Christopher J. Deal is no longer counsel of record for the aforementioned party in this case for the reason indicated in the G–123 Notice. Filed by Petitioner Consumer Financial Protection Bureau. (Deal, Christopher) (Entered: 05/18/2017) |
| 05/18/2017 | 49 | Notice of Appearance or Withdrawal of Counsel: for attorney Kent A Kawakami counsel for Petitioner Consumer Financial Protection Bureau. Filed by plaintiff Consumer Financial Protection Bureau. (Kawakami, Kent) (Entered: 05/18/2017) |
| 05/18/2017 | 50 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Respondent Future Income Payments, LLC. Appeal of Order,,, Terminated Case,, 47 . (Appeal Fee – $505 Fee Paid, Receipt No. 0973–19880157.) (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Ord, Isabelle) (Entered: 05/18/2017) |
| 05/18/2017 | 51 | EX PARTE APPLICATION to Stay pending APPEAL Order,,, Terminated Case,, 47 filed by Respondent Future Income Payments, LLC. (Attachments: # 1 Memorandum, # 2 Declaration, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Proposed Order) (Ord, Isabelle) (Entered: 05/18/2017) |
| 05/19/2017 | 52 | OPPOSITION opposition re: EX PARTE APPLICATION to Stay pending APPEAL Order,,, Terminated Case,, 47 51 filed by Petitioner Consumer Financial Protection Bureau. (Bateman, Kristin) (Entered: 05/19/2017) |
| 05/19/2017 | 53 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 17–55721 (yl) (Entered: 05/22/2017) |

| 05/23/2017 | 54 | MINUTES (IN CHAMBERS) ORDER by Judge Josephine L. Staton denying 51 EX PARTE APPLICATION to Stay Pending Appeal. (see document for details). (dro) (Entered: 05/23/2017) |
|---|---|---|
| 06/01/2017 | 55 | ORDER from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals, 50 filed by Future Income Payments, LLC. CCA # 17–55721. Appellant's emergency motion to stay the district court's May 17, 2017 order pending appeal is granted. (mat) (Entered: 06/05/2017) |
| 06/19/2017 | 56 | DESIGNATION of Record on Appeal by Respondent Future Income Payments, LLC re 50 (Ord, Isabelle) (Entered: 06/19/2017) |
| 06/20/2017 | 57 | NOTICE OF CLERICAL ERROR: Due to clerical error Re: Transcript (CV) 42 . Docket Entry 42 Corrected Transcript: Page 5, Line 16 "knowing" should be "non." Page 5, Line 25 "it's a" should be "it's a [sic]" Page 22, Lines 22–23 "FTCV admission submissions" should be "FTC v. Invention Submissions. (rrp) (Entered: 06/20/2017) |

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 24th day of November, 2017, I caused this Appellant's Excerpts of Record to be filed electronically with the Clerk of the Court using the CM/ECF System. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Christopher Wayne Jones
*Counsel for Appellant*
*Future Income Payments, LLC*